## Clinical Review Memo

| Customer Name | Claimant Name | Claim Number |
|---|---|---|
| Associated Terminals LLC | Garret Hyatt | 1220064300 |

| | | | |
|---|---|---|---|
| **Report Date:** | 10/28/2023 | | |
| **Referred By:** | Karryn Nettell | **Claimant DOB:** | 06/18/1985 |
| **Referral Date:** | 10/13/2023 | **Job Title:** | Boat Captain (light occ) |
| **Due Date:** | 10/28/2023 | **Medical/ Surgical Condition:** | Superior glenoid labrum lesion s/p L shoulder arthroscopy w/ SLAP repair along w/ RC debridement & subacromial bursectomy, performed on 1/10/23 |
| **Referral Type:** | Standard File Review | **Disability Occupational Type:** | |
| **Reason for Priority Handling:** | | **Product Type:** | LTD |
| **Other Considerations** | | **LDW:** | 02/27/2022 |
| | | **DOD:** | 02/28/2022 |
| **Physical Demands:** | | **BBD:** | 05/29/2022 |
| **Non-Medical Issue:** | No | **Non-Medical Issue Details:** | |

### Referral Questions:

1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s) on up to the first 3 diagnoses.

   The medical record documentation available for review supports that this claimant has had no musculoskeletal condition which could be considered impairing as of 6/5/23 at which time he was 5 months status post left shoulder arthroscopic repair of a SLAP tear with subacromial decompression and debridement of rotator cuff tendinitis that was performed by Dr. Finney on 1/10/23 (Op Note not available for review).

   The claimant had completed his postop PT for his left shoulder on 5/8/23 after 28 treatment sessions since he had obtained all of his PT treatment goals, and in Dr. Finney's 6/5/23 OVN it was noted that, other than the claimant's complaint of moderate discomfort in his left shoulder (NOS), the claimant's left shoulder exam was unremarkable, and there was no documentation that the claimant was having any functional impairment from his left shoulder with regard to his ability to perform any activities. Dr. Finney advised no additional treatment but again noted (as he had

EXHIBIT

in his 5/8/23 OVN) that the claimant had permanent restrictions of no lifting greater than 20 pounds and was able to perform job activities only at the Light or Sedentary demand levels. The claimant was again evaluated by Dr. Finney on 7/17/23 for complaint of left shoulder pain which was assessed by Dr. Finney to be due to impingement syndrome (i.e. not related to the claimant's previous SLAP repair). The claimant had an otherwise unremarkable left shoulder exam, and there was no documentation that the claimant's left shoulder symptoms were impairing his ability to perform any activities. Dr. Finney performed a subacromial steroid injection of the claimant's left shoulder, advised no additional treatment, and again noted that the claimant required R/Ls for his left shoulder as previously documented on a permanent basis. The claimant was next evaluated by Dr. Finney on 9/18/23 for left shoulder pain due to mild impingement syndrome for which Dr. Finney prescribed the claimant a Medrol Dosepak and again noted that the claimant required permanent R/Ls for his left shoulder.

In summary, given the fact that a reasonable postop recovery following this claimant's uncomplicated 1/10/23 arthroscopic left shoulder SLAP repair with subacromial decompression and debridement of rotator cuff tendinitis would be 6 months to allow recovery from the surgery and healing of the SLAP repair, completion of postop PT/home exercise program, and follow-up evaluation by Dr. Finney, the fact that the claimant had an unremarkable left shoulder exam when examined by Dr. Finney on 6/5/23 at which time there was no documentation that the claimant had any impairment from his left shoulder of his ability to perform any activities, the fact at that the claimant's subsequent visits with Dr. Finney on 7/17/23 and 9/18/23 he had an unremarkable left shoulder exam except for mild left shoulder pain due to impingement syndrome (rotator cuff tendinitis) that was not related to the claimant's 1/10/23 arthroscopic SLAP repair and which would not be expected to be an ongoing problem particularly since Dr. Finney's 1/10/23 left shoulder arthroscopy also included a subacromial decompression (enlarging the space between the acromion and underlying rotator cuff to prevent impingement of the rotator cuff on the acromion) and did not include a rotator cuff repair, and the fact that there is no documentation that the claimant had any additional evaluation or treatment for his left shoulder by any medical provider after 6/5/23 other than his clinic visits with Dr. Finney on 7/17/23 and 9/18/23 at which time he had unremarkable left shoulder exams, it is reasonable to assess that the claimant had no impairment with regard to his left shoulder as of 6/5/23 and as a result had the capacity to resume all of his normal job activities on a full-time basis without the need for any R/Ls at that time. The fact that the claimant did have follow-up evaluation by Dr. Finney for his left shoulder on 7/17/23 and 9/18/23 for treatment of rotator cuff tendinitis due to impingement would not provide a basis for impairment.

At the time of this claimant's DOD his musculoskeletal impairment was an acute left shoulder dislocation that occurred on the job on 2/28/22 when he fell on his employer's boat. His left shoulder dislocation was close reduced in the ER that day, and he had follow-up evaluation by Dr. Mead (Ortho, different practice than Dr. Finney) on 3/2/22. Dr. Mead noted that the claimant had also sustained an acute left

anterior shoulder dislocation while jet skiing the previous May, and he referred the claimant for a left shoulder CT scan for further evaluation. The 3/7/22 left shoulder CT scan demonstrated a Hill-Sachs deformity (a bony defect on the posterior superolateral humeral head due to impaction on the anterior glenoid as a result of the claimant's previous 2 anterior shoulder dislocations) which placed the claimant at increased risk for future anterior left shoulder dislocations. After reviewing the claimant's left shoulder CT scan on 3/9/22 Dr. Mead advised the claimant to proceed with left shoulder arthroscopy to evaluate and treat the claimant's left shoulder instability. In his 3/29/22 Op Note Dr. Mead noted that the claimant had a non-bony Bankart tear involving the entirety of the anterior glenoid labrum extending from the 12 o'clock to 6 o'clock position, and that he performed a 3 anchor knotless labral repair with an inferior to superior capsular shift to stabilize the claimant's left shoulder. Dr. Mead also noted that the claimant's Hill-Sachs deformity did not engage with the anterior labrum with left shoulder range of motion which indicated that the Hill-Sachs deformity did not need to be addressed surgically. The claimant's postoperative course was prolonged by persistent left shoulder pain and stiffness despite a prolonged course of PT, and in his 5/27/22 OVN Dr. Mead noted that the claimant was to follow-up with his partner Dr. Buhler for reasons that were not documented. In Dr. Buhler's 7/7/22 and 8/18/22 OVNs it was noted that the claimant was still complaining of left shoulder pain with restricted left shoulder range of motion (on 8/18/22 the claimant's active left shoulder range of motion was forward flexion 150° (normal 180°), abduction 80° (normal 180°), internal rotation to L5 (normal to lower thoracic spine), and external rotation 15° (normal 60°)). Although Dr. Buhler advised the claimant needed to remain out of work and continue PT, there is no additional documentation from Dr. Buhler or PT available for review after 8/18/22. The first documentation from Dr. Finney that is available for review is his 11/7/22 referral of the claimant for a left shoulder MRI scan, followed by his 11/28/22 Work note, and 1/16/23, 3/13/23, and 4/10/23 PT referrals for evaluation and treatment of the claimant's left shoulder following his 1/10/23 left shoulder arthroscopic surgery. The first OVN from Dr. Finney that is available for review is dated 5/8/23.

2. If applicable please identify clinically significant comorbid Diagnosis(es) with ICD with ICD 10 Codes(s) on up to the first 3 diagnoses.

   The medical record does not support that the claimant has any clinically significant comorbid diagnoses which could be considered impairing. However, the fact that this claimant's left shoulder condition at the time of his DOD through his evaluation and treatment by Dr. Finney was due to a Worker's Comp injury (Z 56.9) may interfere with the claimant's ability to RTW.

3. Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 09/18/2023 to Beyond , and comment on the expected duration. What are the patient's maximum functional capabilities and what they can perform in an 8 hour workday, and would we anticipate any change in functional capacity? If so, when?

See above.

4. Are the restrictions and limitations placed upon the claimant's work activities by his attending physician reasonable and consistent with the medical findings? Please explain.

   Given the fact, as discussed above, that a reasonable postoperative recovery following the claimant's uncomplicated 1/10/23 left shoulder arthroscopic surgery would be 6 months, the fact that as of the claimant's 6/5/23 OV with Dr. Finney he had an unremarkable left shoulder exam and had no subsequent evaluation or treatment for his left shoulder by any medical provider after 6/5/23 other than by Dr. Finney on 7/17/23 and 9/18/23 for mild left shoulder pain due to impingement syndrome (rotator cuff tendinitis) which was not related to his arthroscopic SLAP repair and the fact that the claimant had otherwise unremarkable left shoulder exams on 7/17/23 and 9/18/23 without documentation that the claimant had any functional impairment with regard to his left shoulder, it is reasonable to assess that as of 6/5/23 the claimant had no impairment with regard to his left shoulder. As a result, Dr. Finney's assessment that the claimant required permanent restrictions of no lifting greater than 20 pounds and the ability only to perform job activities at the Light-Sedentary demand level is not supported.

5. Please initiate AP contact if necessary to clarify any significant areas such as diagnosis, R/Ls, treatment opportunities, prognosis, or reason for work absence:

a) Timothy Finney, MD (Phone Number: 504-897-6351; Fax Number: 504-899-7317/504-897-6442).

   In order to expedite this peer to peer review I sent Dr. Finney a letter regarding the above assessment of the claimant's functional capacity with regard to his left shoulder as of 6/5/23 using the RightFax format on 10/28/23.

**Analysis of Medical Documentation and Support for Responses to Referral Questions:**

See above.

**All medical records provided by Lincoln Financial Group through the Sequoia link which accompanied this claim review request as of today's date were reviewed.**

**Electronically Signed:**

**Richard Avioli, MD, FAAOS**
**Board Certified Orthopedic Surgery**