# Norman v. Life Ins. Co. of N. Am.

United States District Court for the Eastern District of Louisiana

August 16, 2017, Decided; August 16, 2017, Filed

CIVIL ACTION NO. 16-17271 SECTION "B"(2)

**Reporter**
2017 U.S. Dist. LEXIS 207468 *

RUSTY NORMAN, ET AL VERSUS LIFE INSURANCE COMPANY OF NORTH AMERICA

**Counsel:** [*1] For Weyman Maxon, on behalf of himself and all others similarly situated, Ashlee Ane Norman, daughter and heir to the Estate of Rusty Norman, Decedent, Plaintiffs: Dennis M. O'Bryan, LEAD ATTORNEY, PRO HAC VICE, O'Bryan Baun Karamanian, Birmingham, MI; Philip Bohrer, LEAD ATTORNEY, Bohrer Law Firm, Baton Rouge, LA; George P. Vourvoulias, III, Vourvoulias Law Firm, LLC, New Orleans, LA; Scott Brady, Scott E. Brady, Attorney at Law, Baton Rouge, LA.

For Life Insurance Company of North America, Defendant: Lauren A. Welch, LEAD ATTORNEY, McCranie, Sistrunk, Anzelmo, Hardy (New Orleans), New Orleans, LA; Jeremy Paul Blumenfeld, PRO HAC VICE, Morgan, Lewis & Bockius (Philadelphia), Philadelphia, PA; Peter Nariman Shadzik, PRO HAC VICE, Morgan, Lewis & Bockius, LLP, New York, NY; Stephanie Lynn Sweitzer, PRO HAC VICE, Morgan, Lewis & Bockius (Chicago), Chicago, IL.

**Judges:** Ivan R. Lemelle, SENIOR UNITED STATES DISTRICT JUDGE.

**Opinion by:** Ivan R. Lemelle

## Opinion

**ORDER AND REASONS**

### I. NATURE OF MOTION AND RELIEF SOUGHT

Before the court are "Defendant's Motion to Dismiss and Motion to Strike Class Allegations" (Rec. Doc. 26), "Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss and Motion to Strike Class Allegations" [*2] (Rec. Doc. 29) and "Reply Memorandum of Law in Further Support of Defendant Life Insurance Company of North America's Motion to Dismiss and Motion to Strike Class Allegations" (Rec. Doc. 39). For the reasons set forth below, **IT IS ORDERED** the Defendant's Motion to Dismiss is **GRANTED** and Defendant's Motion to Strike Class Allegations is **DISMISSED AS MOOT**.

### II. FACTS AND PROCEDURAL HISTORY

Plaintiffs Rusty Norman, Ashlee Anne Norman[1] and Weyman Maxson bring claims against the Life Insurance Company of North America pursuant to the Employee Retirement Income Security Act of 1974 (ERISA) (Rec. Doc. 24). Rusty Norman and Weyman Maxson brought the instant suit after suffering injuries as seaman. Plaintiffs are seeking to recover the full amount of long term disability benefits that defendant insurance company allegedly improperly reduced (Rec. Doc. 24). Plaintiffs allege that the defendants improperly offset their monthly disability benefits amount because it considered maintenance benefits and

[1] Plaintiff Rusty Norman passed away on December 10, 2016 and Ashlee Ane Norman was substituted as a party.

lump sum settlements under the Jones Act, 46 U.S.C. § 30104 to constitute "other income benefits" under the Plaintiffs' policy.

## III. PARTIES CONTENTIONS

Defendant argues that it did not improperly calculate the Plaintiffs [*3] monthly long term disability benefits. Defendant argues that there are offset provisions that apply to the payments that Plaintiffs received that justify the reduction in the Plaintiffs' disability benefits. Defendant argues that pursuant to the operative policy Plaintiffs offset claims fail as a matter of law. Plaintiffs argue that these provisions do not justify the Defendant's calculations and that they are entitled to recovery under the compensatory regime.

## IV. FACTUAL AND LEGAL FINDINGS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. *See* *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (quoting *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)).

When reviewing a motion to dismiss, courts must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009))(internal quotation marks omitted). The Supreme Court in *Iqbal* explained that [*4] *Twombly* promulgated a "two-pronged approach" to determine whether a complaint states a plausible claim for relief. *Iqbal*, 129 S.Ct. at 1950. First, courts must identify those pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Legal conclusions "must be supported by factual allegations." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.

Upon identifying the well-pleaded factual allegations, courts "assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.* at 1950. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Typically when deciding a Rule 12(b)(6) motion the Court must base its decision on only the complaint. However, when a Plaintiffs claims hinges on the terms of an ERISA plan and it is referred to [*5] numerous times in the complaint, the Court can consider the terms of the plan when evaluating a motion to dismiss under 12(b)(6). *Thomas v. Prudential Ins. Co. of Am.*, Case No.:14-00747, 2015 U.S. Dist. LEXIS 65449, at*5-6 (M.D. La. May 19, 2015). Here, the long term disability policies are referred to in the amended complaint and integral to the Plaintiff's offset claims so this Court will consider them (Rec. Doc. 24).

In the instant controversy an ERISA plan vested the defendant with discretionary authority to construe the plan terms and consequently the defendant's decision will only be reversed if the Plaintiff can

demonstrate the defendant's actions were an abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989) ;( Rec. Doc. 26-3). There is no indication that the Defendant abused its discretion. Furthermore, Plaintiffs' claims fail as their disability offsets were allowed as a matter of law under the policy. In the Amended Complaint Plaintiffs admitted to receiving a lump sum settlement under the Jones Act and maintenance under general federal maritime law (Rec. Doc. 24). These monetary awards justify the Defendant's offset.

The Jones Act provides a cause of action in negligence for any seaman injured during the course of his or her employment. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354, 115 S. Ct. 2172, 132 L. Ed. 2d 314 (1995). Furthermore, in a Jones [*6] Act claim the term negligence "is given a liberal interpretation that includes any breach of duty that an employer owes to his employees who are seamen." *Metcalfe v. Coastal Towing, L.L.C.*, Case No.:07-8674, 2009 U.S. Dist. LEXIS 16118, at*4 (E.D. La. Feb. 12, 2009). In addition, federal maritime common law allows recovery of "maintenance" and "cure" to cover lost wages, medical costs, food, lodging, and other expenses. *Johnson v. Cenac Towing, Inc.*, 599 F. Supp. 2d 721, 726 (E.D. La. 2009) ("The maritime employer's duty of maintenance and cure, which dates at least to the medieval sea codes, obligates him to pay for the lost wages, medical care, food, lodging, and other incidental expenses of a mariner who falls ill or is injured while in the service of the vessel.") (*internal citation omitted*). "The duty is practically absolute. Unlike an employer's duty under the Jones Act, for example, liability for maintenance and cure is in no sense . . . predicated on the fault or negligence of the shipowner." *Id.* (*ellipses in original; internal quotations and citations omitted*). Maintenance is a federal maritime claim that does not require proof of negligence and is similar to workers' compensation. *Abogado v. International Marine Carriers*, 890 F. Supp. 626, 630(N.D. Tex. June 20, 1995).

Under the Plaintiffs' policy it states that they would receive an offset for any "other income benefits" and this provision includes "any local, state, provincial or federal [*7] government disability or retirement plan or law payable for injury or sickness provided as a result of employment with the Employer." (Rec. Doc. 26-3). The Jones Act and federal maritime law fall within that disability offset as they are compensatory schemes that relate to claims that arise from employment injuries. Plaintiffs allege that these insurance provisions are ambiguous and that because seaman are wards of admiralty there should be statutory construction in favor of seaman. *Karim v. Finch Shipping Co.*, 374 F.3d 302, 311 (5th Cir. 2004). There is no indication that Karim applies to an ERISA context. Furthermore, this Court does not find that there is a contractual ambiguity in the policy provisions that would justify this approach. For example, under Louisiana contract law, "[w]hen the words of a contract are clear and explicit and lead to not absurd consequences, no further interpretation may be made in search of the parties' intent." La Civ. Code. Art. 2046. Similarly, the term "other income" is defined clearly and explicitly in the Plaintiff's insurance policy. There is no showing of ambiguity in the document. Plaintiffs claim fail as a matter of law as the insurance policy and the law of this circuit allow the Defendants to offset Plaintiffs' long term [*8] disability payments given the provisions of their policy and the allegations made in their complaint.

## V. CONCLUSION

For the reasons set forth above, **IT IS ORDERED** the Defendant's Motion to Dismiss is **GRANTED** and Defendant's Motion to Strike Class Allegations is **DISMISSED AS MOOT**.

New Orleans, Louisiana, this 16th day of August, 2017.

/s/ Ivan R. Lemelle

SENIOR UNITED STATES DISTRICT JUDGE

---

End of Document

# Gonzales v. Metro. Life Ins. Co.

United States District Court for the Eastern District of Louisiana

August 13, 2020, Decided; August 13, 2020, Filed

NO. 20-1022 SECTION "R" (4)

**Reporter**
2020 U.S. Dist. LEXIS 145804 *; 2020 WL 4698977

RAMOS GONZALES VERSUS METROPOLITAN LIFE INSURANCE COMPANY

**Counsel:** [*1] Ramos Gonzales, Plaintiff, Pro se, Metairie, LA.

For Metropolitan Life Insurance Company, Defendant: Joel Paul Babineaux, LEAD ATTORNEY, Babineaux, Poche, Anthony & Slavich, LLC, Third Floor, Lafayette, LA; William B Wahlheim, Jr, PRO HAC VICE, Maynard, Cooper & Gale, PC, Ste 2400, Birmingham, AL.

**Judges:** SARAH S. VANCE, UNITED STATES DISTRICT JUDGE.

**Opinion by:** SARAH S. VANCE

## Opinion

**ORDER AND REASONS**

Before the Court is defendant Metropolitan Life Insurance Company's ("MetLife") unopposed motion to dismiss.[1] Because plaintiff's claim is both completely preempted under the Employment Retirement Income Security Act of 1974 ("ERISA"), § 502, 29 U.S.C. § 1132, and conflict preempted under ERISA § 514, 29 U.S.C. § 1144, the Court grants the motion.

### I. BACKGROUND

This case arises from an insurance coverage dispute. On February 4, 2018, while attending a parade, plaintiff Ramos Gonzales suffered a stroke.[2] At the time, he had an insurance policy with defendant MetLife.[3] Gonzales made a claim under the policy, but MetLife allegedly denied the claim for failure to show adequate "proof of loss."[4]

Gonzales sued MetLife in state court pursuant to La. R.S. § 22:1821.[5] MetLife removed this matter to federal court on March 26, 2020.[6] MetLife initially filed its motion to dismiss plaintiff's claim [*2] on April 2, 2020, with a submission date of May 6, 2020.[7] Before responding to the motion to dismiss, plaintiff terminated the services of his counsel on May 29, 2020,[8] and the Court allowed plaintiff's counsel to withdraw.[9] On June 5, 2020, the Court ordered plaintiff to submit, by June 19, 2020, a written statement regarding future representation and the steps he was taking to secure new counsel. The Court continued the submission date on the motion to dismiss to July 15, 2020.[10] Plaintiff did not timely respond to the Court's order, and in an out of time response, indicated an

[1] R. Doc. 5.

[2] R. Doc. 1-1 at 4, ¶ II.

[3] *See id.* at 4-5, ¶ III.

[4] *See id.* at 3, ¶ V.

[5] *See generally* R. Doc. 1-1.

[6] R. Doc. 1.

[7] R. Doc. 5.

[8] R. Doc. 16-2.

[9] R. Doc. 18.

[10] R. Doc. 18; R. Doc. 19.

intention or desire to search for counsel.[11] On June 23, 2020, the Court issued an order notifying plaintiff that he must prosecute the case with or without counsel and that failure to prosecute the case may result in the imposition of appropriate sanctions, including dismissal.[12] Plaintiff did not respond to the motion to dismiss either in person or through counsel. The Court now considers the motion to dismiss.[13]

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded facts as true and views the facts in the light most favorable to the plaintiff. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The Court [*3] must resolve doubts as to the sufficiency of the claim in the plaintiff's favor. *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir. 2001).

But to survive a Rule 12(b)(6) motion, a party must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Courts must dismiss the claim if there are insufficient factual allegations to raise the right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). The Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679.

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id.*

### B. ERISA Preemption

ERISA may preempt state law claims in one of two ways. *See Gomez v. Ericsson, Inc*. 828 F.3d 367 (5th Cir. 2016) (citing *Haynes v. Prudential Health Care*, 313 F.3d 330, 334 (5th Cir. 2002); *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 336 (5th Cir. 1999)). First, the federal law may "occupy a particular field, resulting in complete preemption under [ERISA] § 502(a), 29 U.S.C. § 1132(a)." *Giles*, 172 F.3d at 336 (citing *Met. Life Ins. v. Taylor*, 481 U.S. 58, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987); *McClelland v. Gronwaldt*, 155 F.3d 507 (5th Cir. 1998), *overruled in part on other grounds by Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 n.11; *see also Arana*, 338 F.3d at 437. "[C]omplete preemption exists when a remedy falls within the scope of [*4] or is in direct conflict with ERISA § 502(a), and therefore is within the jurisdiction of federal court." *McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004).

The second form of ERISA preemption is "ordinary" or "conflict" preemption. It exists when ERISA provides an affirmative defense to state law claims and involves ERISA § 514(a), 29 U.S.C. § 1144(a). *Giles*, 172 F.3d at 337. Section 514(a) provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employer benefit plan." 29 U.S.C. § 1144(a) (emphasis added). Unlike complete preemption, the mere presence of conflict preemption does not raise a federal question.

[11] R. Doc. 20.

[12] R. Doc. 21.

[13] R. Doc. 5.

Instead of "transmogrifying a state cause of action into a federal one—as occurs with complete preemption—conflict preemption serves as a defense to a state action." *Giles*, 172 F.3d at 337 (citing *Soley v. First Nat'l Bank of Commerce*, 923 F.2d 406, 407-08 (5th Cir. 1991); *Rice v. Panchal*, 65 F.3d 637, 639-40 (7th Cir. 1995)). When a state law claim is conflict preempted by ERISA, the appropriate result is dismissal. *See Ellis v. Liberty Life Assur. Co. of Bos.*, 394 F.3d 262, 266 (5th Cir. 2004) (affirming dismissal of claim when "the district court dismissed Ellis's state-law claims . . . holding that they are preempted by ERISA").

The party asserting ERISA preemption has the burden to demonstrate that ERISA preempts the claims at issue. *See Bankston v. UNUM Life Ins.*, No. 07-5507, 2009 U.S. Dist. LEXIS 16117, 2009 WL 57104, at *2 (E.D. La. 2009); *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 573 (5th Cir. 1980).

## III. DISCUSSION

### A. Whether the Policy Is an ERISA Plan

To determine whether plaintiff's claim is preempted—either under the doctrine of complete preemption [*5] or conflict preemption—the Court must first determine whether MetLife's insurance policy is an ERISA "plan." 29 U.S.C. § 1002(3). A "plan" or "employee benefit plan" is "an employee welfare benefit plan." 29 U.S.C. § 1002(3). An "employee welfare benefit plan" is described as follows:

> any plan, fund, or program which was . . . established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . benefits in the event of sickness, accident, disability, death or unemployment . . . .

*Id.* at § 1002(1). The Fifth Circuit uses a three-part test to decide whether an insurance policy is a plan under ERISA. *Shearer v. Sw. Serv. Life Ins.*, 516 F.3d 276, 279 (5th Cir. 2008). To qualify, "the arrangement must be (1) a plan, (2) not excluded from ERISA coverage by the safe-harbor provisions established by the Department of Labor, and (3) established or maintained by the employer with the intent to benefit employees." *Id.*

First, the MetLife insurance policy[14] is a "plan" within the meaning of the statute. To make this determination, courts ask whether, when looking at the policy, "a reasonable person could ascertain the intended [*6] benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Meredith v. Time Ins.*, 980 F.2d 352, 355 (5th Cir. 1993). This information is apparent from the face of the certificate of insurance on the MetLife policy. The certificate of insurance lists various benefits including "critical illness benefit for . . . stroke."[15] It also describes beneficiaries as "eligible classes."[16] The certificate names Panasonic as the "policyholder" and indicates the insurance is financed through the payments of premiums by the policyholder.[17] Finally, the certificate contains information on procedures for "filing a claim."[18] Second, the policy is not excluded from ERISA coverage by the Department of Labor's safe-harbor provisions. The Department's safe-harbor provisions apply to a group insurance program in

---

[14] R. Doc. 5-2. MetLife has attached a certificate of insurance to its motion to dismiss. A court may consider documents a defendant attaches to a motion to dismiss if the documents are "referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). Plaintiff refers to the insurance policy in his complaint. *See* R. Doc. 1-1 at 4-5, ¶ III. His action is to recover benefits allegedly owed under the terms of the policy; thus, the insurance certificate is central to his claims.

[15] R. Doc. 5-2 at 18.

[16] *Id.* at 15-16.

[17] *Id.* at 2, 28.

[18] *Id.* at 30.

which "[n]o contributions are made by an employer." 29 C.F.R. § 2510.3-1(j)(1). The certificate of insurance indicates that plaintiff's employer, Panasonic, paid premiums for the group policy.[19] Third, it is clear from the face of the certificate of insurance that Panasonic, the policyholder, acquired the policy with the intent to benefit its employees in the event of critical illness.[20] *See Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 241 (5th Cir. 1990) (employer demonstrated an intent to benefit employees when it purchased [*7] and maintained a group insurance policy like the one at issue here).

**B. Preemption**

*1. Complete Preemption*

"[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004). In other words, ERISA's civil enforcement provision completely preempts any state cause of action that falls within its scope. *See Arana* 338 F.3d at 440 (5th Cir. 2003) (quoting *Taylor*, 481 U.S. at 66) ("Put simply, there is complete preemption jurisdiction over a claim that seeks relief 'within the scope of the civil enforcement provisions of § 502(a).'").

Under *Davila*, 542 U.S. at 210, a cause of action "falls within the scope" of the ERISA civil enforcement provision if (1) the plaintiff could have brought the claim under ERISA § 502(a)(1)(B), and (2) defendant's actions do not implicate any other independent legal duty. Here, plaintiff could have brought his claim for unpaid benefits under ERISA § 502(a)(1)(B). A claim under § 502(a)(1)(B) "is relatively straightforward." *Id.* When "a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits." *Id.*

The entirety of plaintiff's complaint is premised [*8] on the alleged wrongful denial of coverage and therefore could have been brought under § 502(a)(1)(B).[21] Further, defendant's actions do not implicate any other legal duty, because plaintiff's claim under La. R.S. § 22:1821 for damages and attorney's fees is dependent on the claim for unpaid benefits. Section 22:1821 provides in relevant part:

> All claims . . . shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent businessman on his guard, exist . . . ."

The Louisiana statute subjects an insurer to a penalty for failure to comply with its provisions "of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court." La. R.S. § 22:1821. This statute does not establish a new legal duty because it does not "impose any liability upon [defendant] so long as [defendant] act[s] in compliance with Plan terms." *Trahan v.*

[19] *See* R. Doc. 5-2 at 2 (listing Panasonic as "policyholder"); *id.* at 28 (describing "Group Billed Insurance" as "insurance in effect under the Group Policy for which the Group Policyholder remits premium").

[20] That Panasonic pays premiums to provide insurance to its employees demonstrates an intent to benefit those employees. *See* R. Doc. 5-2 at 28. Additionally, the certificate of insurance states that the "Board of Directors of Panasonic Corporation shall be empowered to amend or terminate the Plan or any benefit under the Plan at any time." *Id.* at 42. Because Panasonic's board has the discretion to terminate benefits, the continued existence of the plan also confirms its intent to benefit its employees.

[21] *See* R. Doc. 1-1 at 5, ¶ V.

*Metro. Life Ins.*, No. 15-2803, 2016 U.S. Dist. LEXIS 80097, 2016 WL 3443658, at *6 (W.D. La. May 20, 2016), *report and recommendation adopted*, No. 15-2803, 2016 U.S. Dist. LEXIS 80086, 2016 WL 3453662 (W.D. La. June 20, 2016). Therefore, ERISA § 502(a) completely preempts plaintiff's claim.

The Fifth Circuit has not expressly [*9] determined the appropriate disposition of a claim that is completely preempted. *See Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 598 n.62 (5th Cir. 2015); *Ford v. Freemen*, 388 F. Supp. 3d 692, 703 (N.D. Tex. 2019). There are two possible approaches. Under the approach taken by the Second Circuit and most district courts in the Fifth Circuit, complete preemption "results in the dismissal of the state-law claim." *Spear Mktg., Inc.*, 791 F.3d at 598 n.62 (quoting *Encompass Office Sols., Inc. v. Ingenix, Inc.*, 775 F.Supp.2d 938, 949 (E.D. Tex. 2011)) (citing *Briarpatch Ltd. v. Phx. Pictures, Inc.*, 373 F.3d 296, 308-09 (2d Cir. 2004)). Alternatively, at least one court has recharacterized a state claim as a properly asserted federal claim and proceeded to adjudicate it on the merits. *Id.* (citing *Kersh v. UnitedHealthcare Ins. Co.*, 946 F. Supp. 2d 621, 630 (W.D. Tex. 2013)).

The Court finds that the appropriate result is dismissal of the claim. *Spear Mktg., Inc.*, 791 F.3d at 598 n.2. In *Spear Marketing*, the Fifth Circuit did not answer whether a completely preempted claim must be dismissed in all events, but it pointed favorably to a prior decision, *GlobeRanger*, 691 F.3d at 706, in which it dismissed claims that were completely preempted under the Copyright Act. And as noted, the Second Circuit and a majority of the district courts in the Fifth Circuit have concluded that complete preemption requires dismissal of the preempted claim. *Spear Mktg.*, 791 F.3d at 598 n.62 (quoting *Encompass Office Sols., Inc.* 775 F.Supp.2d at 949) (citing *Briarpatch Ltd.*, 373 F.3d at 308-09). Based on this authority, the Court holds that the plaintiff's claim must be dismissed because it is completely preempted.

*2. Conflict Preemption*

Even if complete preemption did not lead to dismissal, plaintiff's [*10] claim must still be dismissed as conflict preempted, because its cause of action relates to an employee benefit plan under ERISA § 514(a), 29 U.S.C. § 1144(a). The Supreme Court interprets ERISA § 514(a) broadly. *See Met. Life Ins. v. Massachusetts*, 471 U.S. 724, 737, 105 S. Ct. 2380, 85 L. Ed. 2d 728 (1985). "[P]reempted state law includes any state law cause of action as it relates to an employee benefit plan, even if it arises under a general law which in and of itself has no connection to employee benefit plans." *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1218-19 (5th Cir. 1992). A state cause of action "relates to" an employee benefits plan when it maintains a "connection with or reference to such plan." *See Hubbard v. Blue Cross & Blue Shield Ass'n.*, 42 F.3d 942, 945 (5th Cir. 1995).

The Fifth Circuit uses a two-part test to determine whether a state claim "relates to" a § 514(a) employee health benefit plan: "(1) whether the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) whether the claims directly affect the relationship among the traditional ERISA entities— the employer, the plan and its fiduciaries, and the participants and beneficiaries." *King v. Bluecross Blueshield of Alabama*, 439 Fed. Appx. 386, 389 (5th Cir. 2011).

Here, the state claim addresses an area of exclusive federal concern: the right to receive benefits under the terms of the plan. *See id.* Plaintiff's entire complaint is premised on his assertion that MetLife violated the terms [*11] of the plan by refusing to pay benefits allegedly due following his stroke.[22] Furthermore, "[c]ourts have consistently recognized that ERISA preempts a claim for unpaid benefits, penalties, and fees under Louisiana Revised Statute

---

[22] R. Doc. 1-1 at 4-5, ¶¶ III, V.

§ 22:657 (now § 22:1821)." *Trahan*, 2016 U.S. Dist. LEXIS 80097, 2016 WL 3443658, at *7; *see also Ponstein v. HMO La., Inc.*, No. 08-663, 2009 U.S. Dist. LEXIS 39754, 2009 WL 1309737 (E.D. La. May 11, 2009) ("Plaintiff's state law claims and remedies, including Plaintiff's state claims for penalties and attorney fees under La. Rev. Stat. § 22:657 (now La. Rev. Stat. § 22:1821) are preempted as they relate to the Plaintiff's claim for benefits under the employee benefit plan."); *Cunningham v. Petroleum Prof'l Int'l*, No. 04-2528, 2006 U.S. Dist. LEXIS 26251, 2006 WL 1044153 (W.D. La. Apr. 19, 2006) ("[I]t is well settled that plaintiff's 'bad faith' claim for Louisiana statutory penalties and attorney's fees pursuant to La. R.S. 22:657 is preempted by ERISA, notwithstanding the fact that the statute is part of the Louisiana Insurance Code."). Further, the right to receive benefits under the terms of an ERISA plan affects the relationship between traditional ERISA entities: the plan and a participant, Gonzales.[23] *See Mayfield v. UNUM Life Ins. Co. of Am.*, No. 15-5553, 2016 U.S. Dist. LEXIS 106899, 2016 WL 4261771, at *4 (E.D. La. Aug. 12, 2016) (quoting *Trahan*, 2016 U.S. Dist. LEXIS 80097, 2016 WL 3443658, at *1) ("a § 22:1821 claim centers upon whether [the] plaintiff had a right to receive benefits under the terms of an ERISA plan, which affects the relationship between traditional ERISA entities."); *King*, 439 F. App'x at 389. Thus, plaintiff's claim "relates to" an employee benefit plan under ERISA § 514(a).

Finally, the Court must consider whether the savings clause of ERISA § 514(b)(2)(A) spares [*12] plaintiff's claim from preemption. *See Garcia v. Best Buy Stores, L.P.*, 416 F. App'x 384, 386 (5th Cir. 2011). The savings clause of § 514(b)(2)(A) provides that, "[e]xcept as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." A law regulates insurance when the law (1) is "specifically directed toward entities engaged in insurance;" and (2) "substantially affect[s] the risk pooling arrangement between the insurer and the insured." *Garcia*, 416 F. App'x. at 386 (citing *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 341-42, 123 S. Ct. 1471, 155 L. Ed. 2d 468 (2003)).

Section 22:1821 does not regulate insurance because it does not affect the risk pooling arrangement. "[Section] 22:1821 authorizes recovery of benefits due under the policy, plus penalties and fees for an insurer's unreasonable failure to timely pay benefits. As such, it is remedial in nature and does not affect the risk (a participant's health care costs) contracted for under the policy." *Trahan*, 2016 U.S. Dist. LEXIS 80097, 2016 WL 3443658, at *8 (internal citation omitted). Because it does not affect risk pooling, § 22:1821 falls outside ERISA's savings clause. Therefore, plaintiff's claim under § 22:1821 relates to a claim under the plan, and the savings clause does not apply. The Court holds that plaintiff's claim is conflict preempted and must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, [*13] the Court GRANTS defendant's motion and dismisses plaintiff's claim. The Court grants plaintiff fourteen (14) days from the date of this order to amend his complaint to assert an ERISA claim for unpaid benefits.

New Orleans, Louisiana, this 13th day of August, 2020.

/s/ Sarah S. Vance

SARAH S. VANCE

[23] A "participant" is defined as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit . . . from an employee benefit plan . . . ." 29 U.S.C. § 1002(7). The certificate of insurance attached to defendant's motion to dismiss demonstrates that this definition applies to plaintiff. *See* R. Doc. 5-2 at 14 ("You and Your means an employee who is insured under the Group Policy for the insurance described in this Certificate.").

UNITED STATES DISTRICT JUDGE

---

**End of Document**

# Trahan v. Metro. Life Ins. Co.

United States District Court for the Western District of Louisiana, Monroe Division

May 20, 2016, Decided; May 20, 2016, Filed

CIVIL ACTION NO. 15-2803

**Reporter**
2016 U.S. Dist. LEXIS 80097 *

KEVIN TRAHAN VERSUS METROPOLITAN LIFE INSURANCE CO.

**Subsequent History:** Adopted by, Partial summary judgment granted by, Dismissed by, in part Trahan v. Metro. Life Ins. Co., 2016 U.S. Dist. LEXIS 80086 (W.D. La., June 20, 2016)

Magistrate's recommendation at, Motion granted by, Motion denied by Trahan v. Metro. Life Ins. Co., 2016 U.S. Dist. LEXIS 183879 (W.D. La., Nov. 29, 2016)

**Counsel:** [*1] For Kevin Trahan, Plaintiff: Anthony J Bruscato, LEAD ATTORNEY, Monroe, LA.

For Metropolitan Life Insurance Co, Defendant: Kyle L Gideon, LEAD ATTORNEY, Davidson Meaux et al, Lafayette, LA.

**Judges:** KAREN L. HAYES, UNITED STATES MAGISTRATE JUDGE. JUDGE ROBERT G. JAMES.

**Opinion by:** KAREN L. HAYES

## Opinion

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion for partial summary judgment filed by Defendant Metropolitan Life Insurance Co. ("MetLife") [doc. # 9] regarding the standard of review to be applied in this ERISA case and whether ERISA preempts the state law causes of action. For reasons explained below, it is recommended that the motion for partial summary judgment [doc. # 9] be GRANTED.

### Background

On November 16, 2015, Kevin Trahan filed the instant suit for damages in the 4th Judicial District Court for the Parish of Ouachita, State of Louisiana, against the issuer of his employer's group health care policy — MetLife. [doc. # 1-1, p. 5]. In January 2013, Plaintiff sustained an injury from an accident while at home. *Id.* Plaintiff contends that MetLife wrongfully denied his disability benefits under the policy provisions. *Id.* at 6. Accordingly, he seeks to recover [*2] his short term disability benefits, long term disability benefits, mental anguish damages, inconvenience, state statutory penalties, court costs, legal interest, attorney's fees and "any and all equitable relief." *Id.*

On December 9, 2015, the Court ordered the parties to file the following:

> I. Within 60 days of the date of this Order, . . . file a (1) joint stipulation, (2) statement, or (3) motion for summary judgment or other dispositive motion as to the following issues:
>
> a. whether ERISA governs the employee benefit plan at issue,
>
> b. whether the plan vests the administrator with discretionary authority to determine eligibility for benefits and/or construe and interpret the terms of the plan, and
>
> c. whether ERISA preempts all state law claims related to the employee benefit plan at issue . . .

(December 9, 2015, Civil Case Mgmt. Order [doc. # 2]). The parties both agree that the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA") governs the plans in question. [docs. # 9-2; # 17]. However, the parties were unable to agree as to whether ERISA preempted all state law claims related to the employee benefit plant at issue and whether "MetLife acted as the Plan's claim administrator [*3] and, under ERISA, is a fiduciary of the Plan with discretionary authority." [docs. # 9-2; # 17].

Accordingly, on February 5, 2016, MetLife filed a motion for partial summary judgment seeking a determination that (1) the Plan vests the Plan Administrator and other Plan fiduciaries, including, MetLife, with discretionary authority to determine eligibility for benefits and to construe and interpret the terms of the Plans; and (2) that all of plaintiff's state law claims are preempted by ERISA. [doc. # 9-1, p. 21-22]. Plaintiff filed his opposition to the motion on April 8, 2016. [doc. # 36]. MetLife filed a reply brief on April 29, 2016. [doc. # 22]). Thus, the matter is ripe.

**Summary Judgment Principles**

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking [*4] summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. "The court *need* consider only the cited materials, but it *may* consider other materials in the record." Fed R. Civ. P. 56(c)(3) (emphasis added). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). There can be no genuine [*5] issue as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

When a movant bears the burden of proof on an issue, it must establish "beyond peradventure[1] all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other

[1] I.e., beyond doubt.

words, the movant must affirmatively establish its right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 14 F.3d 52, 1993 WL 560271 (5th Cir. 1993) (unpubl.).

**Analysis**

**I. Standard of Review of MetLife's Claim Determinations**

MetLife contends that the discretionary authority granted to it in the short-term and long-term benefit plans warrants a deferential standard of review of MetLife's claim determinations. [doc. # 9-1, p. 13]. "ERISA was enacted 'to promote the interests of employees and their beneficiaries in employee benefit plans' and 'to protect contractually defined benefits.'" *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 393 (5th Cir. 1998) (citation omitted). To achieve these goals, ERISA requires every employee welfare benefit [*6] plan to,

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

When deciding whether to pay or deny benefits, a plan administrator must make two general types of determinations: "[f]irst, [s]he must determine the facts underlying the claim for benefits. . . . Second, [s]he must then determine whether those facts constitute a claim to be honored under the *terms* of the plan." *Schadler*, 147 F.3d at 394 (citation omitted) (emphasis in original). If a plan participant has been denied benefits, then ERISA permits a claimant to bring suit in federal court "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B).

Under ERISA, the factual determinations made by the plan administrator or fiduciary are reviewed for abuse of discretion. *Southern Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 100-101 (5th Cir. 1993) (citing *Pierre v. Conn. Gen. Life Ins. Co.*, 932 F.2d 1552 (5th Cir. 1991)). However, a plan administrator's interpretation or application of the plan is reviewed de novo "'unless [*7] the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Aboul-Fetouh v. Employee Benefits Committee*, 245 F.3d 465, 471-472 (5th Cir. 2001) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 956-57, 103 L. Ed. 2d 80 (1989)).

The Court emphasizes that "the administrator's factual determinations are reviewed for abuse of discretion, regardless of the administrator's ultimate authority to determine benefit eligibility." *Chacko v. Sabre, Inc.*, 473 F.3d 604, 610 (5th Cir. 2006) (citations omitted). Moreover, when "a challenge to a denial of benefits . . . disputes whether an individual's conditions qualify as a disability, the inquiry involves factual determinations . . .[,]" which is subject to review for abuse of discretion. *McDonald v. Hartford Life Group Ins. Co.*, 361 Fed. Appx. 599, 607 (5th Cir. Jan. 19, 2010) (unpubl.) (citing *Wade v. Hewlett-Packard Development Co. LP Short Term Disability Plan*, 493 F.3d 533, 540 (5th Cir. 2010)); *see also* *Bellaire General Hosp. v. Blue Cross Blue Shield of Michigan*, 97 F.3d 822, 828 (5th Cir. 1996) (accepting Plan Administrator's concession that decisions regarding medical necessity were factual determinations); *Johnson v. Hartford Life Ins. Co.*, 2008 U.S. Dist. LEXIS 14597, 2008 WL 544465, *2 (W.D. La. Feb. 27, 2008) (Hicks, J.), *affirmed*, 304 Fed. Appx. 346 (5th Cir. 2009) (plan insurer's decision that plaintiff was not disabled is a factual

determination) (citing *Meditrust Financial Services, Corp. v. Sterling Chemicals, Inc.*, 168 F.3d 211, 214 (5th Cir.1999)).

As for determinations regarding eligibility for benefits or construction of plan terms, the Fifth Circuit has emphasized that, "[d]iscretionary authority cannot be implied; an administrator has no discretion to determine eligibility or interpret the plan unless the plan language expressly confers such authority on the administrator." [*8] *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 636 (5th Cir. 1992) (citing *Cathey v. Dow Chemical Co. Medical Care Program*, 907 F.2d 554, 558 (5th Cir. 1990)). The courts do not require any particular "linguistic template;" rather, the plan must be read "as a whole" to determine whether it confers discretionary authority upon the plan administrator or fiduciary. *See Wildbur, supra.* Nonetheless, the plan must *expressly* and *unambiguously* confer discretionary authority upon the administrator to determine entitlement to benefits. *See* Cathey, 907 F.2d at 559.

MetLife contends that the following Plan provisions confer the it with discretionary authority to determine eligibility for benefits or to construe plan terms,

> 1) "MetLife will review your claim and notify you of its decision to approve or deny your claim." [doc. # 9-3, p. 53; # 9-4, p. 57].
> 2) "After MetLife receives your written request appealing the initial determination, MetLife will conduct a full and fair review of your claim. . . . MetLife will notify you of its final decision . . . ." [doc. # 9-3, p. 54; # 9-4, p. 58].
> 3) "Prudent Actions by Plan Fiduciaries. . . . ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called 'fiduciaries' of the Plan. . . ." [doc. # 9-3, p. 55; # 9-4, p. 59].
>
> 4) "Discretionary Authority of Plan [*9] Administrator and Other Plan Fiduciaries. . . . Plan fiduciaries shall have discretionary authority to interpret the terms of Plan and to determine eligibility for and entitlement to benefits in accordance with the terms of the Plan." [doc. # 9-3, p. 55; # 9-4, p. 59].

Both plans unambiguously endow the Plan fiduciaries with discretionary powers to interpret the terms of the Plans and to evaluate claims for benefits. However, Plaintiff asserts that MetLife is not a fiduciary under the plans in question. Specifically, Plaintiff claims that "(1) MetLife did not undertake to serve as a plan fiduciary . . . . (2) Additionally or alternatively, if MetLife undertook to serve as a plan fiduciary, it did so illegally because of an irreconcilable conflict of interest. . . ." [doc. # 16, p. 2].

Plaintiff argues that MetLife is not the Plan fiduciary because there are no documents which state that MetLife was to perform any administrative function other than the payment of claims—its inherent duty as the insurer of the Plan rather than as administrator of the Plan. Defendants argue that the above language makes it clear that discretionary authority is given to the insurer of the Plan, MetLife.

[*10] The existence of a fiduciary relationship under ERISA is a mixed question of law and fact. *Kramer v. Smith Barney*, 80 F.3d 1080, 1083 n.2 (5th Cir. 1996). The term "fiduciary" is defined in 29 U.S.C. § 1002(21)(A) to include persons who, with respect to an employee benefit plan, "[exercise] any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control regarding management or disposition of its assets." ERISA § 3, 29 U.S.C. § 1002(21)(A). "Thus, a person is a fiduciary if that person has discretion in deciding whether claims are to be paid or establishes the policies and procedures to be followed in evaluating claims. Conversely, persons who provide only ministerial or actuarial services are not fiduciaries." *McManus v. Travelers Health*

*Network of Texas*, 742 F.Supp. 377, 382 (W.D. Tex. 1990) (internal citations omitted); *see also*, *Timmons v. Special Ins. Services*, 984 F. Supp. 997, 1005 (E.D. Tex. 1997) ("whether an insurer is an ERISA fiduciary depends largely upon which hat the insurer wears—that of a party with some discretion over management of the Plan or that of a party with purely ministerial duties.").

The term fiduciary has been given "a liberal construction in keeping with the remedial purposes of ERISA. A person is a fiduciary only with respect to those portions of a plan over which he exercises discretionary authority or control." *American Fed'n of Unions Local 102 v. Equitable Life Assurance Soc'y*, 841 F.2d 658, 662 (5th Cir. 1988). Consistent with the broad definitional language of "fiduciary" in 29 U.S.C. § 1002(21), an insurance company may become a fiduciary of an ERISA plan by falling within the definition of a "fiduciary" contained in § 1002(21)(A). 181 A.L.R. Fed. 269 §§ 2[a], 15 (2002). Courts in the Fifth Circuit have expressly held that an insurance company is a plan fiduciary insofar as it determines ERISA benefits claims. *See, e.g.*, *Vega v. National Life Ins. Services, Inc.*, 145 F.3d 673 (5th Cir. 1998), *reh'g en banc granted, opinion vacated on other grounds*, 167 F.3d 197 (5th Cir. 1999) *and on reh'g en banc*, 188 F.3d 287 (5th Cir. 1999); *Pierre v. Connecticut General Life Ins. Company/Life Ins. Co. of North America*, 932 F.2d 1552 (5th Cir. 1991); *American Fed'n of Unions Local 102*, 841 F.2d 658; *Timmons* 984 F. Supp. at 1005; *McManus*, 742 F. Supp. at 382 ("In claiming that Defendants unlawfully denied Plaintiffs' benefits, Plaintiffs implicitly acknowledge that Defendants had the [*11] authority and discretion to determine whether Plaintiffs' claims should be paid. Plaintiffs cannot now be heard to argue that those with the authority to pay or deny their claims are not fiduciaries as defined by ERISA.").

In *Vega*, the court found that an insurance company that determined medical benefits claims under an ERISA plan was a fiduciary notwithstanding a provision in the plan summary that identified the employer as the plan administrator and stated that the insurance company was not to be deemed a named fiduciary or plan administrator. The court noted that the insurance company fell within the § 1002(21)(A) definition, since it had complete discretionary authority to decide claims, as indicated by the express terms of the plan summary, which stated that it had "complete discretion" in making determinations regarding plan coverage, payment of claims, or interpretation of the plan. *Vega*, 145 F.3d 673.

Here, Quanta, Plaintiff's employer, is the designated "Plan administrator." [doc. # 9-3, p. 52; # 9-4, p. 56]. Under "ERISA Information," the Summary Plan Description instructs that: (1) the claimant must report the claim to MetLife and "MetLife will review your claim and notify you of its decision to approve [*12] or deny your claim;" (2) MetLife has the right to end the policy; (3) MetLife conducts a full and fair review of claim appeals; (4) decisions by MetLife are final; and (5) MetLife has the right to request further information and to notify a claimant as to its claim decision. [doc. # 9-3, p. 52-54; # 9-4, p. 56-58]. Thus, under these provisions MetLife effectively has final authority to determine claims. Further, the Plan directs Plaintiff that a legal action on a claim is to be brought against MetLife. [doc. # 9-3, p. 44; # 9-4, p. 47] ("Us" is defined as MetLife under the Plan definitions). Finally, the Summary Plan Description provides that the Plan administrator and "other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility." [doc. # 9-3, p. 55; # 9-4, p. 59]. Based on the foregoing, the Court finds that although Quanta, the sponsoring employer, is nominally the administrator of the Plan, discretion is in fact vested in the insurer, MetLife, and therefore, MetLife is endowed with fiduciary status under ERISA.

Plaintiff also contends that MetLife is not a fiduciary because MetLife is violating its duty of

loyalty by denying [*13] benefits under the plan while also running a for-profit corporation. [doc. # 16, p. 6]. Plaintiff argues that due to the self interest in keeping profits high, MetLife's conflict of interest prevented MetLife from a fair evaluation in the process of his claims.

In *Metropolitan Life Insurance Company v. Glenn*, 554 U.S. 105, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008), the Supreme Court held that a structural conflict of interest created by the plan administrator's dual role in making benefits determinations and funding the benefit plan does not prevent it from being a fiduciary under ERISA, but should be taken into account on judicial review of a discretionary benefit determination. The Fifth Circuit noted that "If the administrator has a conflict of interest, [the court should] weigh the conflict of interest as a factor in determining whether there is an abuse of discretion in the benefits denial, meaning [the court should] take account of several different considerations of which conflict of interest is one." *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 247 (5th Cir. 2009) (internal quotations omitted).

If the plan administrator has a conflict of interest (such as where the ERISA plan administrator is also a payer of benefits), the Court merely "weigh[s] the conflict of interest as a factor in determining whether there is an abuse of discretion in the benefits [*14] denial." *See Holland*, 576 F.3d at 247, 248 n. 3

Accordingly, in the event that any issues of plan term interpretation arise in the course of these proceedings, the court shall review the issue(s) under the abuse of discretion standard. *See Firestone Tire & Rubber Co.*, 489 U.S. at 115.

**II. Plaintiff's Claims are Preempted by ERISA**

There are two distinct types of preemption under ERISA: complete preemption under § 502(a) (the civil enforcement provision codified at 29 U.S.C. § 1132(a)) and conflict or express preemption under § 514 (codified at 29 U.S.C. § 1144(a)). *See Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 275 n.34 (5th Cir. 2004); *Cunningham v. Petroleum Prof'l Int.*, Civ. Action No. 04-2528, 2006 U.S. Dist. LEXIS 26251, 2006 WL 1044153 (W.D. La. Apr. 19, 2006). The former supports federal question jurisdiction, whereas the latter does not. *Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287, 291 (5th Cir. 1999) (*en banc*).

Complete preemption occurs when a federal statute wholly displaces a state law cause of action, and in effect, converts or recasts the state law claim into a federal cause of action. *Metropolitan Life Insurance Company v. Taylor*, 481 U.S. 58, 62-66, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987); *Aetna Health, Inc., v. Davila*, 542 U.S. 200, 207-211, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004). ERISA's civil enforcement provision is a statute with such preclusive force for any cause of action that falls within its "scope." *Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) (*en banc*). A cause of action falls "within the scope" of ERISA's civil enforcement provision when the plaintiff *could* have brought his claim under ERISA § 502(a)(1)(B), *and* where there is no other independent legal duty implicated by the defendant's actions. *Davila*, 542 U.S. at 210, 124 S. Ct. 2488. In making this determination, the court must examine the plaintiff's petition, the statute upon which [*15] his claims are based, and the various plan documents. *Id.*

The court discerns from plaintiff's petition state law claims for recovery of health benefits purportedly due under a group health plan and statutory penalties and fees for failure to timely pay the foregoing benefits.[2]

Plaintiff does not explain the statutory or codal

[2] Although Plaintiff does not state under which specific state statutory provision he seeks penalties and fees, the court will analyze the claim under from Louisiana Revised Statute § 22:1821.

authority for his claim to recover unpaid benefits. The omission, however, is of no moment, because whether the claim derives from § 22:1821, Civil Code Article 1994 for breach of contract, or some other source, the end result is still the same. It is manifest that Plaintiff could have brought his claim for failure to pay healthcare benefits under ERISA § 502(a)(1)(B).[3] Furthermore, MetLife's duty to pay benefits does not arise independently of ERISA or the plan terms. Indeed, there is no indication that § 22:1821 or Article 1994 impose any liability upon MetLife so long as MetLife acted in compliance with Plan terms. Thus, consideration and interpretation of plan terms is necessary for a claim for denial of benefits under these state law provisions. As plaintiff's state law [*16] claim for denial of benefits is not entirely independent of the federally regulated contract, it necessarily falls within the scope of ERISA § 502(a)(1)(B) and is thereby completely preempted. *Davila, supra.*

In contrast to § 22:1821, ERISA's § 502(a)(1)(B) does not authorize penalties for the unreasonable failure to timely pay benefits. Accordingly, the court will analyze this claim and plaintiff's claim for detrimental reliance under principles of ordinary or express preemption.

ERISA's express preemption provision, § 514(a), states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan. . . ." 29 U.S.C. § 1144(a) (emphasis added). This provision is purposefully expansive, [*17] and is intended to "ensure that employee benefit plan regulation would be exclusively a federal concern." *Davila,* 542 U.S. at 208, 124 S. Ct. at 2495. Thus, any state-law cause of action that "duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Davila, supra.*

The courts apply a two-prong test to determine whether a state law "relates to" an employee health benefit plan for purposes of ERISA preemption: "(1) whether the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) whether the claims directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *King v. Bluecross Blueshield of Alabama*, 439 F. App'x 386, 389 (5th Cir. 2011) (citing *inter alia Woods v. Tex. Aggregates, L.L.C.*, 459 F.3d 600, 602 (5th Cir. 2006). Because ERISA preemption is an affirmative defense, defendants bear the burden of proof on both elements. *Bank Of Louisiana v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 242 (5th Cir. 2006) (citations omitted).

It is manifest that plaintiff's claims are conflict-preempted by ERISA. Courts consistently have recognized that ERISA preempts a claim for unpaid benefits, penalties, and fees under Louisiana Revised Statute § 22:657 (now § 22:1821).[4] *Ponstein v. HMO Louisiana Inc.*, Civ. Action No. 08-663, 2009 U.S. Dist. LEXIS 39754, 2009 WL 1309737 (E.D. La. May 11, 2009) (and cases cited therein). Indeed, a § 22:657/1821 claim centers [*18] upon whether plaintiff had a right to receive benefits under the terms of an ERISA plan, which affects the relationship between traditional

[3] ERISA § 502(a)(1)(B) provides that "[a] civil action may be brought — (1) by a participant or beneficiary — . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). As the Supreme Court explained, "[t]his provision is relatively straightforward. If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits." *Davila,* 542 U.S. at 210, 124 S. Ct. at 2496.

[4] Effective January 1, 2009, the Louisiana Legislature amended and reenacted Title 22 of the Louisiana Revised Statutes to re-designate then-existing provisions of Title 22 into a new format and number scheme *without changing the substance of the provisions*. (Acts 2008, No. 415, § 1).

ERISA entities. In fact, by its own terms, § 22:1821 defers to ERISA plans: "[t]he provisions of this Paragraph shall not apply to medical benefit plans that are established under and regulated by the Employment Retirement Income Security Act of 1974." La. R.S. § 22:1821(F).

Plaintiff does not seriously contest the foregoing analysis. Instead, he contends that his claim(s) fall under ERISA's "savings clause," which provides that "[e]xcept as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A).[5] For a state law to be considered a law that regulates insurance under the savings clause, it must meet two requirements: 1) "the state law must be specifically directed toward entities engaged [*19] in insurance;" and 2) "the state law must substantially affect the risk pooling arrangement between the insurer and the insured." *Garcia v. Best Buy Stores, L.P.*, 416 F. App'x 384, 386 (5th Cir. 2011) (*citing Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 341-342, 123 S. Ct. 1471, 155 L. Ed. 2d 468 (2003)).

To affect the risk-pooling arrangement, a "statute must alter the scope of permissible bargains between insurers and insureds and thus substantially affect the risk-pooling arrangements that insurers may offer." *Ellis*, 394 F.3d at 277-78 (citations and internal quotation marks omitted). Statutes that are remedial in nature, i.e. that provide remedies "to which the insured may turn when injured by the bad faith of the insurer," do not affect the bargain that an insurer makes with its insured, and therefore, do not affect the "risk" contracted for by the insurer. *Ellis, supra*.

Here, § 22:1821 authorizes recovery of benefits due under the policy, plus penalties and fees for an insurer's unreasonable failure to timely pay benefits. La. R.S. § 22:1821. As such, it is remedial in nature and does not affect the risk (a participant's health care costs) contracted for under the policy. *See Ellis, supra*; *Letter v. UNUM Provident Corp.*, Civ. Action No. 02-2694, 2003 U.S. Dist. LEXIS 15884, 2003 WL 22077803 (E.D. La. Sept. 5, 2003) (§ 22:657 does not substantially affect the risk pooling [*20] arrangement between insurer and insured). Having failed at least one component of the *Miller* test, the court necessarily finds that § 22:1821 does not fall within ERISA's savings clause. *Tingle v. Pac. Mut. Ins. Co.*, 996 F.2d 105, 108 (5th Cir. 1993) (applying the old three part *Metropolitan Life* test). Thus, plaintiff's § 22:1821 claim for penalties is also preempted by ERISA.

## Conclusion

Pursuant to the parties' agreement on uncontested facts, the court finds that the subject plan is an ERISA plan. [*See* doc. # 17]. In the event any issues of plan term interpretation arise in the course of Plaintiff's claim for wrongful denial of benefits, the court must review the issue(s) under an abuse of discretion standard. Furthermore, plaintiff's state law claim for failure to pay benefits under the plan is completely preempted by ERISA. Plaintiff's remaining state law claims for recovery of penalties and fees under § 22:1821 is conflict-preempted by ERISA. Thus, it is subject to dismissal, with prejudice, on that basis.

For the above-assigned reasons,

**IT IS RECOMMENDED** that MetLife's motion for partial summary judgment [doc. # 9] be **GRANTED**, and that judgment be entered in favor of Defendant declaring that plaintiff's state law claim for unpaid benefits under the Plan is completely [*21] preempted by ERISA, and thus, recast as a claim under ERISA § 502(a)(1)(B).

---

[5] Subparagraph (B) (a/k/a/ the "deemer clause") restricts the savings clause by exempting employee benefit plans from state regulation as insurance companies. *Custom Rail Employer Welfare Trust Fund v. Geeslin*, 491 F.3d 233, 235 (5th Cir. 2007) (citing *inter alia*, 29 U.S.C. § 1144(b)(2)(B)).

**IT IS FURTHER RECOMMENDED** that in the event any issues of plan term interpretation arise in the course of plaintiff's claim for wrongful denial of benefits, the court shall review the issue(s) under an abuse of discretion standard.

**IT IS FURTHER RECOMMENDED** that plaintiff's state law claim for penalties under Louisiana Revised Statute § 22:1821 be DISMISSED, with prejudice, as preempted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL** [*22] **THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE**.

In Chambers, at Monroe, Louisiana, this 20th day of May, 2016.

/s/ Karen L. Hayes

KAREN L. HAYES

UNITED STATES MAGISTRATE JUDGE

End of Document

# Benoit v. Liberty Life Assur. Co.

United States District Court for the Western District of Louisiana, Lafayette Division

October 6, 2017, Decided; October 6, 2017, Filed

Civil Action No. 17-00641

**Reporter**
2017 U.S. Dist. LEXIS 199477 *

Benoit versus Liberty Life Assurance Co. Of Boston, et al

**Subsequent History:** Adopted by, Dismissed by, in part, Dismissed without prejudice by, in part, Motion denied by, in part Benoit v. Liberty Life Assur. Co. of Boston, 2017 U.S. Dist. LEXIS 198296 (W.D. La., Dec. 1, 2017)

Motion granted by, in part, Motion denied by, in part Benoit v. Liberty Life Assur. Co. of Boston, 2018 U.S. Dist. LEXIS 249907 (W.D. La., May 8, 2018)

Magistrate's recommendation at Benoit v. Liberty Life Assur. Co, 2019 U.S. Dist. LEXIS 101523, 2019 WL 2413421 (W.D. La., Jan. 24, 2019)

**Counsel:** [*1] For Carolyn D Benoit, Plaintiff, Counter Defendant: J Lomax Jordan, Jr, LEAD ATTORNEY, Law Offices of J Lomax Jordan Jr, Lafayette, LA; Victor R A Ashy, Law Office of Max Jordan, Lafayette, LA.

For Liberty Life Assurance Co of Boston, Defendant, Counter Claimant: Rene' E Thorne, LEAD ATTORNEY, Jackson Lewis (NO), New Orleans, LA; Iwana Rademaekers, PRO HAC VICE, Law Offices of Iwana Rademaekers, Dallas, TX.

For L'Oreal U S A Inc, SalonCentric Inc, L'Oreal U S A Rewards, Defendants: Ryan Edward Griffitts, LEAD ATTORNEY, Littler Mendelson (DAL), Dallas, TX; Rachel A Purcell, Wesley E Stockard, PRO HAC VICE, Littler Mendelson (ALT), Atlanta, GA.

**Judges:** CAROL B. WHITEHURST, UNITED STATES MAGISTRATE JUDGE. Judge Rebecca F. Doherty.

**Opinion by:** CAROL B. WHITEHURST

## Opinion

### REPORT AND RECOMMENDATION

Before the Court, on referral from the district judge, is a Motion To Partially Dismiss Plaintiff's Complaint pursuant to Federal Rule 12(b)(6) filed by Defendant Liberty Life Assurance Company of Boston ("Liberty") [Rec. Doc. 3] and Plaintiff, Carolyn D. Benoit's, Memorandum in Opposition to Liberty's Motion [Rec. Docs. 21], as well as a Motion To Dismiss Plaintiff's Complaint pursuant to Federal Rule 12(b)(6) filed by Defendants L'Oreal USA, Inc. ("L'Oreal"), [*2] SalonCentric, Inc. ("SalonCentric") and L'Oreal USA Rewards ("L'Oreal Rewards") (collectively referred to as the "L'Oreal Defendants") [Rec. Doc. 13], Plaintiff's Memorandum in Opposition [Rec. Doc. 22], and the L'Oreal Defendants' Reply thereto [Rec. Doc. 28]. As the Motions deal in part with identical issues, the Court will consider both Motions in this Report and Recommendation and will sometimes refer to Liberty and the L'Oreal Defendants as "Defendants."[1]

[1] In their Motion, the L'Oreal Defendants state that Plaintiffs' Complaint is confusing as to whether Plaintiff's claims at issue are asserted against Liberty only or are also asserted against the L'Oreal Defendants. Thus, they represent the L'Oreal Defendants' Motion To Dismiss, *R. 13*, includes all arguments against Plaintiff's Complaint whether made against Liberty, the L'Oreal Defendants, or both.

***I. Factual Background***

In her Complaint, *R. 1*, Plaintiff seeks recovery of long term disability benefits under a group disability income policy and plan (collectively referred to the "Disability Plan"), which is a component benefit program of the SalonCentrics, Inc. Comprehensive Welfare Benefits Plan ("Welfare Plan") sponsored by SalonCentric. Liberty Life Assurance Company of Boston ("Liberty") served as the claims administrator for the Disability Plan and also provided benefits under its Policy as the insurer. Both the Disability Plan and the Welfare Plan are governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA").

Plaintiff's First Cause of Action in her Complaint seeks recovery of disability benefits [*3] under ERISA § 502(a)(1)(B), *R. 1, ¶¶ 22, 31, 36-44*. Her Complaint's Second Cause of Action asserts a claim for recovery of damages under certain provisions of the Louisiana State Insurance Act based on provisions of the Disability Plan. *Id.,¶¶ 46-49*. The Fourth Cause of Action in Plaintiff's Complaint asserts a claim for declaratory relief and recovery of healthcare premium payments provided under the SalonCentric, Inc. Comprehensive Health Plan ("Healthcare Plan"), which is also a component benefit program of the Welfare Plan. The Healthcare Plan is an ERISA-governed plan which provides health insurance benefits to employees of SalonCentric. *R. 13-2, Healthcare Plan, pp. 60, 84, Article XII, § 19.5; R. 13-3, Welfare Plan, p. 1, §§ 1.1, 1.2*. In accordance with 29 U.S.C. § 1133(2), the Healthcare Plan contains a comprehensive claims process whereby a participant who believes he or she has been denied any benefit under the Healthcare Plan must file a claim for benefits with the claims administrator, and then also must appeal the claim for further review if it is denied. *R. 13-2, pp. 75-80, Article XVII; R. 13-3, pp. 15-16, Article VII*.

In their Motions, Defendants argue that Plaintiff has failed to state a claim for relief with regard to either the Second [*4] Cause of Action or the Fourth Cause of Action and these claims must be dismissed with prejudice. They further argue that Plaintiff cannot make a claim for compensatory, exemplary and penalty damages under the ERISA Plans at issue.

***II. Contentions of the Parties***

Defendants assert the Court should dismiss Plaintiff's claims under the Louisiana State Insurance Code in the Second Cause of Action of Plaintiff's Complaint—in particular, her claims under La. R.S. §§ 22:990, 22:1973 and 22:1821—because they are preempted. They further assert that La. R.S. §§ 22:990 and 22:1973 provide no individual cause of action to Plaintiff. As to Plaintiff's Fourth Cause of Action, Defendants contend her claim for COBRA benefits should be dismissed because she failed to exhaust her administrative remedies in that regard. Finally, they assert that Plaintiff's Prayer for compensatory, statutory exemplary and penalty damages must be dismissed because such damages are not provided under ERISA.

Plaintiff argues that the ERISA Insurance Savings Clause prevents preemption of her claims under La. R.S. §§ 22:990, 22:1973 and 22:1821. As to her COBRA claim, Plaintiff contends that because she exhausted her administrative remedies under the Disability Plan, she should not be required to do so under the Healthcare Plan because the benefits [*5] are "interrelated." Plaintiff does not address her request in the Prayer for compensatory and exemplary damages.

***III. Legal Standard***

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point

of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007). Accordingly, Rule 12(b)(6) allows a defendant to move for expeditious dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Further, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in [*6] the complaint are true (even if doubtful in fact)." *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205.

When deciding a 12(b)(6) motion to dismiss, the court "must consider the complaint in its entirety, as well as ... documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007); *see also Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) ("[W]e note approvingly, however, that various other circuits have specifically allowed that '[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

***IV. Law and Argument***

*A. Plaintiff's Second Cause of Action*

*1. Plaintiff's Claims under* La.R.S. §§ 22:1973 *and* 22:1821

Defendants assert that Plaintiff's claims under the Louisiana State Insurance Code in the Complaint's Second Cause of Action should be dismissed because they are pre-empted by ERISA. ERISA contains an explicit preemption clause, § 514(a), which states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate* to any employee benefit plan...." 29 U.S.C. § 1144(a) (emphasis added). It is "well-established that the 'deliberately expansive' language of [Section 514(a) ] ... is a signal that it is to be construed extremely broadly." *Reliable Home Health Care, Inc. v. Union Cent. Ins. Co.*, 295 F.3d 505, 515 (5th Cir. 2002). This provision [*7] is purposefully expansive, and is intended to "ensure that employee benefit plan regulation would be exclusively a federal concern." *Aetna Health, Inc., v. Davila*, 542 U.S. 200, 208, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004). Thus, any state-law cause of action that "duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.*

The Fifth Circuit has explicitly held that "the mere fact that a statute is part of a comprehensive state insurance code will not exempt it from preemption." *Aucoin v. RSW Holdings, L.L.C.*, 476 F.Supp.2d 608, 614 (M.D.La.,2007) (quoting *Tingle v. Pacific Mutual Insurance Co.*, 996 F.2d 105, 109 (5th Cir.1993)). A state statute is considered a law that regulates insurance under the saving clause only if (1) "the state law [is] specifically directed toward entities engaged in insurance;" and (2) "the state law must substantially affect the risk pooling arrangement between the insurer and the insured." *Mayfield v. UNUM Life Ins. Co. of Am.*, 2016 U.S. Dist. LEXIS 106899,

2016 WL 4261771, at *5 (E.D. La. Aug. 12, 2016) (quoting *Garcia v. Best Buy Stores, L.P.*, 416 Fed.Appx. 384, 386 (5th Cir. 2011). To affect the risk-pooling arrangement, a "statute must alter the scope of permissible bargains between insurers and insureds and thus substantially affect the risk-pooling arrangements that insurers may offer." *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d at 277-78. Statutes that are remedial in nature, i.e. that provide remedies "to which the insured may turn when injured by the bad faith of the insurer," do [*8] not affect the bargain that an insurer makes with its insured, and therefore, do not affect the "risk" contracted for by the insurer. *Id.*

Plaintiff claims she is entitled to special damages and penalties under La. R.S. § 22:1973[2] and that she is entitled to penalties because of delay in payment pursuant to La. R.S. § 22:1821[3]. These state law claims clearly "relate to" an ERISA plan, as they are both specifically based on terms of the Disability Plan that Plaintiff claims are unlawful. *R. 1*. It is well settled—as courts have consistently held—that both of these statutes are remedial in nature such that they are not saved from preemption by the savings clause of 29 U.S.C. § 1144(b)(2)(A). *See, e.g., Simpson v. Reliance Standard Life Ins. Co.*, 2016 U.S. Dist. LEXIS 80973, 2016 WL 3566951, at *2 (W.D. La. May 19, 2016) (finding claim for bad faith penalties under La. R.S. § 22:1220 (now La. R.S. § 22:1973) preempted by ERISA); *Anderson v. Bus. Men's Assur. Co.*, 2003 U.S. Dist. LEXIS 9833, 2003 WL 21305335, at *9 (E.D. La. 2003) (holding that La. R.S. § 22:1220 (now La. R.S. § 22:1973) is preempted by ERISA because it provides remedies that are outside the ambit of ERISA's civil enforcement provision); *Trahan v. Metropolitan Life Insurance Co.*, 2016 U.S. Dist. LEXIS 80097, 2016 WL 3443658, at *7 (W.D.La., 2016)(collecting cases and explaining that "[c]ourts consistently have recognized that ERISA preempts a claim for unpaid benefits, penalties, and fees under Louisiana Revised Statute § 22:657 (now § 22:1821[4])"); *Wright v. Louisiana Corrugated Products, LLC*, 59 F.Supp.3d 767, 776 (W.D.La.,2014) ("Courts consistently have recognized that ERISA preempts a claim for unpaid benefits, penalties, and fees under Louisiana Revised Statute § 22:657 (now § 22:1821)"). Accordingly, Plaintiff's claim under La. R.S. §§ 22:1973 and 22:1821 are preempted [*9] by ERISA.

*2. Plaintiff's Claims Under* La.R.S. §§ 22:990 *And* 22:1973

La. R.S. § 22:990 provides in pertinent part:

> A. An individual or group disability loss of income policy to provide loss of income protection against total disability may be issued in this state consistent with the definitions and provisions of this Section.

La. R.S. § 22:990. Plaintiff contends that La. R.S. § 22:990 (formerly La. R.S. § 22:230)[5] applies to her Disability Plan and requires that such a policy must be consistent with the provisions and definitions contained in the statute. *R. 1, ¶ 47*. She alleges that her Disability Plan is contrary to the provisions of 22:990 in that the Plan's definition of disability is more restrictive than that allowed in the statute. *Id.* Based on the violation under Section 22:990, Plaintiff argues that she is entitled to penalties and attorneys fees under La. R.S. § 22:1973.

---

[2] Louisiana Acts 2008, No. 415, § 1 renumbered La.R.S. § 22:1220 as **La.R.S. § 22:1973**. The statute imposes a "good faith" duty upon insurers.

[3] La R.S. § 22:657, was redesignated as La. R. S. § 22:1821 in 2009 without changing the substance of the provision. La. Acts 2008, No. 415, § 1.

[4] La. R.S. § 22:1821 explicitly defers to ERISA plans: "[t]he provisions of this Paragraph shall not apply to medical benefit plans that are established under and regulated by [ERISA]." La. R.S. § 22:1821(D)(2)(f).

[5] La.R.S. § 22:990 was renumbered from R.S. 22:230 by Acts 2008, No. 415, § 1, effective January 1, 2009 without changing the substance of the provisions.

While Defendants suggest that 22:990 is preempted by ERISA, they argue, without jurisprudential support, that Plaintiff has no right of action under the statute and therefore cannot file an action seeking to recover any sort of independent damages or relief for a violation of La. R.S. § 22:990. Defendants further assert that Plaintiff does not have a right of action under La. R.S.§ 22:1973 because the statute does not apply to claims made under health and accident insurance [*10] which includes Plaintiff's Disability Plan.

At the outset, the Court notes that La. R.S. § 22:990 is not precluded by ERISA preemption. *See Hawk v. Century Telephone Enterprises*, 2009 WL 775394, at *11 (W.D.La., 2009) (citing *House v. American United Life Ins. Co.*, 499 F.3d 443, 455 at n.9 (5th Cir. 2007). In *Hawk*, the court considered the plaintiff's reliance on La. R.S. § 22:230 in arguing that the definition of "total disability" in her ERISA policy was overly restrictive. Here, Plaintiff makes the same argument albeit relying on 22:990, the Louisiana legislature's re-designation of 22:230. In holding that Section 22:230 was not preempted by ERISA, the *Hawk* court explained that the statute "directly regulates the business of insurance and substantially affects the risk pooling agreements between insurers and insureds" and thus is exempt from ERISA preemption. *Hawk* at *12 (citing *House* (citing 29 U.S.C. § 1144(b)(2)(A)). The court went on to determine whether or not the definition of disability under the policy at issue was unduly restrictive under Louisiana law. *Id.*

Plaintiff contends that Defendants' violation of La. R.S. § 22:990 also violated the duty of good faith and fair dealing, entitling her to penalties and attorneys' fees under La. R.S. § 22:1973. Defendants argue that there is no cause of action for such a claim under § 22:1973 with regard to Plaintiff's Disability Plan. The Court agrees. The Louisiana State Insurance Code defines "health and accident' [*11] insurance to include: "Insurance of human beings against bodily injury, disablement or death by accident or accidental means, or the expense thereof, or against disablement, or expense resulting from sickness or old age . . ." La. R.S. § 22:47(2)(a). As a matter of law, a health and accident policy is not subject to Section 22:1973, which "shall not be applicable to claims made under health and accident insurance policies." § 22:1973(D). *Candies Shipbuilders, LLC v. Westport Ins. Corp.*, 2016 U.S. Dist. LEXIS 18263, 2016 WL 614694, at *4 (E.D.La., 2016). The Disability Plan in this case specifically provides for disability income benefits in the event of disablement, and thus clearly falls within this exception to the applicability of La. R.S. § 22:1973. Accordingly, while Defendants have failed to prove that Plaintiff has no right of action under La. R.S. § 22:990, the Court finds that the Disability Plan fails to support a claim under La. R.S. § 22:1973.

*B. Plaintiff's Fourth Cause of Action*

Plaintiff alleges a claim for declaratory relief and recovery of healthcare premium payment provided under the Healthcare Plan, also an ERISA-governed plan. Pursuant to 29 U.S.C. § 1132, a plaintiff claiming benefits owed under an ERISA plan "must first exhaust available administrative remedies under the plan before bringing suit to recover benefits." *Bourgeois v. Pension Plan for Employees of Santa Fe Intern. Corps.*, 215 F. 3d 475, 479 (5th Cir. 2000). The Fifth Circuit recognizes an exception to the exhaustion requirement [*12] where an administrative appeal would be "futile." *Id.* However, "failure to show hostility or bias on the part of the administrative review committee is fatal to a claim of futility." *McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004).

The documents attached to the Complaint provide that Plaintiff's Long Term Disability ("LTD") benefits were terminated by a letter from Liberty dated June 13, 2016. *R. 1-4, Exh. K.* Plaintiff filed her appeal of the termination of the LTD benefits

on December 2, 2016. *Id.* On February 2, 2017, Liberty acknowledged that it had completed a review of the appeal and "maintained the decision to deny benefits beyond June 16, 2016." *Id. at Exh. L*. Plaintiff filed a letter of Reconsideration of the Appeal Decision on February 10, 2017. *R. 1-5, Exh. M*.[6]

Plaintiff "suggests" that her appeal of the disability determination is sufficient exhaustion of available administrative remedies under the Healthcare Plan. She contends that the Disability Plan documents generally provide that during the period of time that a covered person is determined under the Disability Plan to be "disabled," the health insurance premiums will be waived or paid. She further contends that once Liberty determined that Plaintiff was no longer disabled [*13] Liberty gave her the option to continue to pay her health insurance premiums under COBRA. Because "[t]he monthly health insurance premium was an element of damage and/or an additional benefit of the Disability Plan completely interconnected with the disability determination," Plaintiff contends it would be senseless to have "two separate appeals on the same issue"—appeal of the Disability Plan and appeal of the Healthcare Plan.

Defendants argue that Plaintiff's Complaint fails to allege that she ever made a claim for the healthcare premium under the Healthcare Plan, much less that she was denied benefits under the Healthcare Plan, or that she exhausted the Healthcare Plan's administrative appeal process. Instead, the allegations in her Complaint and the Disability Plan documents attached thereto relate only to the group disability income policy—which does not provide for any healthcare benefits she now seeks. Plaintiff has not, nor can she, contend that filing a claim for healthcare benefits would be futile. Nor does she state a claim for equitable relief.

ERISA does not specifically require a claimant to exhaust her administrative remedies. *See Hall v. National Gypsum Co.*, 105 F.3d 225, 231 (5th Cir.1997). However, relying on Congressional intent, [*14] the Fifth Circuit has adopted the rule that a "plaintiff generally must exhaust administrative remedies afforded by an ERISA plan before suing to obtain benefits wrongfully denied." *Chailland v. Brown & Root, Inc.*, 45 F.3d 947, 950 (5th Cir.1995); see *Wilson v. Kimberly-Clark Corp.*, 254 Fed.Appx. 280, 285 (5 Cir. 2007) (quoting Lacy v. Fulbright & Jaworski, 405 F.3d 254, 256 (5th Cir.2005) ("A claimant who is denied benefits under an ERISA plan must exhaust all administrative remedies afforded by the plan before instituting litigation for recovery of benefits."). The exceptions to this exhaustion rule are extremely limited. *See Hall*, 105 F.3d at 231 (recognizing exceptions to the general rule where resort to administrative remedies is futile or the remedy inadequate). Plaintiff does not argue that she falls within any of the applicable exceptions to the administrative exhaustion requirement.

Courts have recognized that the purposes of the exhaustion requirement are to (1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not de novo. *See Denton v. First Nat'l Bank of Waco, Texas*, 765 F.2d 1295, 1300 (5th Cir.1995). Lawsuits by plan participants are proper only after [*15] the exhaustion of administrative remedies because participants otherwise would be able to circumvent the administrative review, and federal courts would be forced to review such claims de novo. *See Denton*, 765 F.2d at 1300. These policies apply here and support the Court's conclusion that Plaintiff must exhaust her administrative remedies.

---

[6] In paragraph 14 of her Complaint, Plaintiff alleges she was not timely provided a copy of certain post-appeal evidence which constituted a violation of 29 C.F.R. § 2560.503-1(d) and (h)(i)-(ii).

*C. Prayer for Compensatory, Statutory Exemplary and Penalty Damages*

In her Prayer for Relief, Plaintiff asserts a right to certain compensatory, statutory and penalty damages, such as "collateral benefits," "[p]enalties," and damages for the wrongful assertion of a lien or privilege...." *R. 1*.

The ERISA statute states, in pertinent part, that a participant or beneficiary of the policy may file suit in order to recover, "benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The Supreme Court has stated that the civil remedies provided by the statute were intended to be comprehensive and exclusive, explaining that, " Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146-48, 105 S. Ct. 3085, 87 L. Ed. 2d 96 (1985). In keeping with the Supreme Court's opinions, [*16] the Fifth Circuit has expressly found that ERISA does not allow for recovery of extracontractual, punitive, or compensatory damages. *Rogers v. Hartford Life & Acc. Ins. Co.*, 167 F.3d 933, 943-44 (5th Cir.1999); *Medina v. Anthem Life Ins. Co.*, 983 F.2d 29, 32-33 (5th Cir.1993). Extracontractual damages are defined as more damages than a beneficiary would be entitled to receive under the terms of the ERISA plan. *Nero v. Industrial Molding Corp.*, 167 F.3d 921, 931 (5th Cir.1999). Thus, any award of compensatory, statutory and penalty damages which Plaintiff seeks must be dismissed as beyond the scope of the ERISA plan.

***V. Conclusion***

For the foregoing reasons, the Court recommends that the Motion To Partially Dismiss Plaintiff's Complaint filed by Defendant Liberty Life Assurance Company of Boston [Rec. Doc. 3] and the Motion To Dismiss Plaintiff's Complaint filed by Defendants L'Oreal USA, Inc., SalonCentric, Inc. and L'Oreal USA Rewards [Rec. Doc. 13] be GRANTED IN PART and DENIED IN PART and (1) Plaintiff's Claims under La.R.S. §§ 22:1973 and 22:1821 (but not La. R.S. § 22:990) in the Second Cause of Action be DISMISSED; (2) Plaintiff's claim under the Fourth Cause of Action for declaratory relief and recovery of healthcare premium payment provided under the Healthcare Plan be DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies; and (3) Plaintiff's Prayer for compensatory, statutory and penalty damages be [*17] DISMISSED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

**THUS DONE AND SIGNED** in Lafayette, Louisiana on this 6th day of October, 2017.

/s/ Carol B. Whitehurst

**CAROL B. WHITEHURST**

**UNITED STATES MAGISTRATE JUDGE**

---

End of Document