# Jimenez v. Sun Life Assur. Co.

United States Court of Appeals for the Fifth Circuit

August 15, 2012, Filed

No. 11-30872

**Reporter**
486 Fed. Appx. 398 *; 2012 U.S. App. LEXIS 17108 **; 53 Employee Benefits Cas. (BNA) 2640; 2012 WL 3495259

ANTONIO JIMENEZ, III, Plaintiff-Appellee v. SUN LIFE ASSURANCE COMPANY OF CANADA; JOHN MEYER; ALLEN CARR, Defendants-Appellants

**Notice:** PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**Subsequent History:** US Supreme Court certiorari denied by Jimenez v. Sun Life Assur. Co. of Can., 2013 U.S. LEXIS 1178 (U.S., Feb. 19, 2013)

**Prior History:** [**1] Appeal from the United States District Court for the Western District of Louisiana. No. 6:10-CV-01307.

**Counsel:** For ANTONIO JIMENEZ, III, Plaintiff - Appellee: James Edward Diaz, Sr., Esq., Lafayette, LA; Joseph L. Lemoine, Jr., Esq., Lemoine & Associates, L.L.C., Lafayette, LA.

For SUN LIFE ASSURANCE COMPANY OF CANADA, JOHN MEYER, ALLEN CARR, Defendants - Appellants: Joshua Bachrach, Esq., Wilson, Elser, Moskowitz, Edelman & Dicker, L.L.P., Philadelphia, PA; Paul Joseph Politz, Esq., Taylor, Wellons, Politz & Duhe, A P.L.C., New Orleans, LA.

**Judges:** Before HIGGINBOTHAM, GARZA, and CLEMENT, Circuit Judges.

## Opinion

[*400] PER CURIAM: *

Antonio Jimenez III filed suit against Sun Life Assurance Company of Canada ("Sun Life"),the claims fiduciary for an employee benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, and two of its employees. Jimenez alleged that Sun Life wrongfully denied his claim for long-term disability benefits under the plan, and he sought damages and other [**2] relief under ERISA and Louisiana law. After the parties filed cross-motions for summary judgment, the district court granted summary judgment for Jimenez on the issue of coverage and made its judgment final pursuant to Federal Rule of Civil Procedure 54(b). Sun Life appealed. For the following reasons, we REVERSE and RENDER on the coverage issue and REMAND to the district court for further proceedings consistent with this opinion.

[*401] **I**

Antonio Jimenez was seriously injured in a one-car accident in Lafayette Parish, Louisiana. According to the police report, his car left the road for over 300 feet, hit several obstructions, and flipped upside down. Jimenez was immediately taken to the hospital for treatment of his injuries. Eventually, Jimenez claimed that he had lost control of his vehicle when he was forced to swerve off the two-

* Pursuant to **5TH CIR. R. 47.5**, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in **5TH CIR. R. 47.5.4**.

lane road by two vehicles racing toward him, one in each lane. [1] In the police report, the investigating officer noted as contributing factors and conditions of the incident (1) a violation for careless operation and (2) a suspicion that alcohol was involved.

When medical staff admitted Jimenez to the hospital, they observed that he "was intoxicated and presents a poor historian." The medical staff also noted that Jimenez claimed to "often drink[] up to a case a day when he is off call" from his job as a coiled tubing operator on offshore oil wells. A police officer asked a nurse to take a blood sample from Jimenez to measure his blood alcohol content ("BAC"). The police sent the blood sample to a crime lab, which found that Jimenez's BAC was 0.15, nearly twice the legal limit in Louisiana. Both parties concede that Jimenez was rendered disabled by the accident and is now unable to perform his job.

At the time of the accident, Jimenez was an employee of Coiled Tubing Company in Lafayette, a division of Smith International, Inc. ("Smith International"). Smith International, which is headquartered in Texas, maintains a Long Term Disability Plan for covered employees. The Plan consists of a group long-term disability insurance policy issued to Smith International by Sun Life. Smith International also maintains a Short Term Disability Plan for its employees. Jimenez received benefits under [**4] the Short Term Plan.

When his Short Term benefits expired, Jimenez filed a claim for Long Term Disability Benefits under Smith International's insurance policy with Sun Life ("the Policy"). Notably, the Policy states that it "is delivered in Texas and is subject to the laws of that jurisdiction." Under the Policy, Smith International pays the premium to provide its employees with long term disability coverage, and Sun Life pays benefits to employees in accordance with the Policy's terms. The Policy expressly excludes from coverage losses "due to . . . committing or attempting to commit an assault, felony or other illegal act."

Sun Life initially denied Jimenez's claims for benefits by letter. Sun Life stated that its review of Jimenez's medical records revealed that his BAC indicated that he had been operating a vehicle while under the influence at the time of the accident. [2] Sun Life then invoked the "illegal acts" exclusion in the policy:

Your policy states:

> Exclusions[:] *No LTD benefit will be provided for any Total or Partial [**5] Disability that is due to:*
>
> *4. committing or attempting to commit an assault, felony or other illegal act.*
>
> Because the documentation submitted with your claim indicated that your injuries were the result of the accident in which you were operating a vehicle under the influence, the group policy excludes any disability resulting from such [*402] accident. Therefore, your claim is denied.

The letter also notified Jimenez of his right to request that Sun Life review its initial denial and to bring a subsequent ERISA suit following an adverse determination on review.

Jimenez timely requested an administrative appeal through counsel. He first noted that he had not been charged with or convicted of a driving while intoxicated offense. He then contended that Sun Life could not deny coverage under the "illegal acts" exclusion because the Policy did not contain a specific "intoxication" exclusion. Jimenez also asserted that "driving under the influence" did not constitute an "illegal act" under the exclusion based

[1] An independent witness gave a voluntary statement to police confirming the fact that two vehicles had raced [**3] down the relevant street around the time of the accident.

[2] In this initial denial letter, Sun Life erroneously stated that Jimenez's BAC was .287; the error apparently resulted from a notation in Jimenez's medical records.

on an application of the "rule of *ejusdem generis.*" Lastly, he asserted that even if driving under the influence were an "illegal act" under the Policy, Sun Life could not establish causation. [**6] That is, Jimenez argued that Sun Life could not prove by a preponderance of the evidence that but for his intoxication offense Jimenez's injuries would not have occurred. Instead, Jimenez argued that his accident occurred because he had swerved off the road to avoid a head-on collision with two cars racing down the street.

Sun Life initially responded by invoking its statutory right to a 45-day extension of its deadline to decide Jimenez's administrative appeal. Sun Life subsequently informed Jimenez that it needed "additional time" to decide his appeal because it needed "additional information" from the police and the district attorney's office regarding the accident. Sun Life acknowledged its statutory deadline for deciding Jimenez's administrative appeal, but it stated that its deadline was tolled until it received the requisite information to complete its review.

As part of its investigation of the appeal, Sun Life engaged a medical expert to assess Jimenez's medical records. The expert concluded that based on the crime lab's analysis of Jimenez's BAC, "[a]ssuming normal toxicokinetics, with a reasonable degree of medical certainty, it would be reasonable to conclude that at [the [**7] time of the accident],the claimant's [BAC] was above 0.08%." The expert's report also included a chart listing the progressive effects of increased BAC levels, which indicated that Jimenez's BAC at the time of the accident would have impaired his reflexes, reaction time, and gross motor control.

Eventually, Jimenez was indicted for driving while under the influence of an alcoholic beverage ("DUI") and for careless operation of a vehicle. [3]

The next week, Sun Life denied Jimenez's administrative appeal, finding (1) that his medical records, his indictment for DUI, and the medical expert's report all indicated that he was committing an illegal act at the time of his accident and (2) that the expert report indicated that his level of intoxication and impairment contributed to the accident. Accordingly, Sun Life denied Jimenez's claim for long-term disability benefits under the Policy pursuant to its "illegal acts" exclusion.

Jimenez filed suit in the district court against Sun Life and two of its employees who reviewed his claim. He asserted causes of action under both Louisiana law and ERISA. Sun Life filed motions for [*403] partial summary judgment on (1) the applicability of ERISA to Jimenez's claims and (2) the merits of its decision to deny coverage to Jimenez pursuant to the Policy's "illegal acts" exclusion. The company argued that the Policy gave it discretion to interpret the terms of the Policy and to make benefit determinations; accordingly, it asserted that the district court could only overturn its decision to deny Jimenez's claim if its decision was not supported by substantial evidence in the administrative record. Sun Life contended that its decision to deny Jimenez's claim was supported by substantial evidence because ample evidence supported its conclusion that Jimenez's illegal act of DUI contributed to the accident that caused his disability.

Eventually, Jimenez admitted that ERISA governs the Sun Life policy, and he filed a cross-motion [**9] for partial summary judgment on the merits of Sun Life's decision to deny his claim for benefits under the Policy and on his request for attorney's fees. He contended that Sun Life had no discretion to interpret the terms of the Policy, thereby requiring the district court to review Sun Life's decision to deny his claim de novo. He also alleged

[3] In the months preceding Jimenez's indictment, a claims service provider retained by Sun Life placed several calls to the local police department, district attorney's office, crime lab, and Lafayette Parish courthouse. In those calls, the claims service provider inquired [**8] about the status of the pending criminal charges against Jimenez and attempted to assist the various law enforcement agencies share information with each other.

that La. R.S. 22:975 prevented Sun Life from interpreting the Policy's "illegal acts" exclusion to allow it to deny coverage when a claimant's disability was caused by his commission of a misdemeanor.

At the hearing on the cross-motions for summary judgment, the district court announced that it would grant summary judgment for Jimenez on the issue of coverage. The district court subsequently entered a written judgment granting summary judgment for Jimenez on the coverage issue, which the court made final and appealable under Federal Rule of Civil Procedure 54(b). Although the court's judgment does not state the basis for its decision, the court's comments at the hearing reveal that it primarily granted judgment for Jimenez because it found that the application of the "illegal acts" exclusion to Jimenez was inequitable. This appeal followed. [4]

## II

On appeal, Sun Life claims that the district court erred by concluding that it improperly denied Jimenez's claim for benefits based on the "illegal acts" exclusion in the Policy. Sun Life contends that the Policy gave it discretion to interpret the terms of the Policy and to determine a claimant's eligibility for benefits. Thus, it asserts that we must review its denial of Jimenez's claim for an abuse of discretion. It argues that its decision denying Jimenez's claim satisfies [**11] the abuse of discretion standard because it was supported by substantial evidence and was not arbitrary and capricious.

In response, Jimenez first contends that we should review Sun Life's benefits determination de novo. He also claims that we should apply Louisiana law to decide this case where it is not preempted by ERISA. Jimenez maintains that if we apply Louisiana law, La. R.S. 22:975 requires [*404] us to conform the terms of the Policy's "illegal acts" exclusion to the language in the "illegal occupation" clause enumerated at La. R.S. 22:975(B)(9); Jimenez argues that the statutory "illegal occupation" clause only allows insurers to deny coverage for losses caused by felonies. He contends that because there is no evidence that felonious conduct contributed to Jimenez's injuries, Sun Life improperly denied coverage under the "illegal acts" exclusion of the policy.

### A

"This Court reviews summary judgments *de novo* in ERISA cases, applying the same standards as the district court." *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 397 (5th Cir. 2007) (citation omitted). The district court rendered judgment for Jimenez on cross-motions for summary judgment; accordingly, we will review [**12] "the motions . . . independently, with evidence and inferences taken in the light most favorable to the nonmoving party." *White Buffalo Ventures, LLC v. Univ. of Tex. at Austin*, 420 F.3d 366, 370 (5th Cir. 2005) (citation omitted). Here, the basis for the district court's decision to grant summary judgment for Jimenez was not entirely clear. However, "[e]ven if we do not agree with the reasons given by the district court to support summary judgment, we may affirm the district court's ruling on any grounds supported by the record." *Lifecare Hosps., Inc. v. Health Plus of La., Inc.*, 418 F.3d 436, 439 (5th Cir. 2005).

If Sun Life had discretionary authority to construe

[4] Before [**10] the court rendered its Rule 54(b) judgment, Sun Life filed a partial motion to dismiss Jimenez's amended complaint under Rule 12(b)(6). Specifically, it contended that his claim for penalties under ERISA and his "abuse of process" and "interference with contract" claims under Louisiana law were preempted by ERISA. After Sun Life filed its notice of appeal from the district court's Rule 54(b) judgment, the court denied Sun Life's pending motion to dismiss. The court concluded that the majority of Sun Life's arguments had been decided in the court's summary judgment, rendering those arguments moot in the motion to dismiss, "including the issues of penalties, damages, and claims against the individual defendants."

the terms of the Policy and to determine a claimant's eligibility for benefits, we will review its interpretation of the Policy's terms and its decision to deny Jimenez's claim for benefits under an abuse of discretion standard. *See* Corry, 499 F.3d at 397. Sun Life contends that we should review its determinations for an abuse of discretion because the Policy gives it the discretionary authority to "make all final determinations regarding claims for benefits under the benefit plan insured by this Policy," including the discretionary [**13] authority to "determin[e] eligibility for benefits" and to "construe the terms of this Policy." The Policy also states that "[a]ny court reviewing Sun Life's determinations shall uphold such determination unless the claimant proves Sun Life's determinations are arbitrary and capricious."

Jimenez counters that we should review Sun Life's decision to deny Jimenez's claim de novo because the Policy itself could not grant any discretionary authority to Sun Life. He notes that the terms of the Policy frame Sun Life's discretionary authority as a delegation of authority from the Plan Administrator—Smith International; the Policy provides that "[t]he Plan Administrator has delegated to Sun Life its entire discretionary authority to make all final determinations regarding claims for benefits under the benefit plan insured by this Policy." Accordingly, he contends that Smith International needed to first reserve discretionary authority to itself in a written instrument before it could grant any discretionary authority to Sun Life in the Policy. We disagree.

Jimenez has conceded that ERISA governs his claims under the Policy even though there is no written document designated as "the Plan." Accordingly, [**14] even without a formal written "Plan," we must assume that Smith International had an intent to "provide its employees with a welfare benefit program through the purchase and maintenance of a group insurance policy." *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 241 (5th Cir. 1990); *see* *id.* at 241 & n.5 (holding that a company's purchase and maintenance [*405] of a group insurance policy established the existence of an ERISA plan even though there was no "formal document designated as 'the Plan'"); *see also* *Shearer v. Sw. Serv. Life Ins. Co.*, 516 F.3d 276, 279 (5th Cir. 2008) ("We have stated that 'the purchase [of insurance] is evidence of the establishment of a plan, fund, or program' and that 'the purchase of a policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established.'" (alteration in original) (citation omitted)).

Moreover, even though the Policy would have more clearly granted discretionary authority to Sun Life if the grant had not been couched as a transfer of Smith International's discretion, the Policy nevertheless unambiguously granted Sun Life discretion to interpret the terms of the Policy [**15] and to determine a claimant's eligibility for benefits. *See* *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 637 (5th Cir. 1992) ("Although the expression of the . . . plan administrator's discretionary authority to determine eligibility may not be as obvious as in some of the cases where we have found similar discretion, we are satisfied that, taken as a whole, [the plan] expresses the discretion of the plan administrator to determine eligibility."). We have declined to adopt a formal approach when determining whether an ERISA plan grants discretionary authority to a plan administrator, and we see no reason to do so here where a group insurance policy (1) establishes the existence of an ERISA plan and (2) clearly grants discretion to the Plan's claims fiduciary. *See id.* ("'[T]he Court in *Firestone* surely did not suggest that 'discretionary authority' hinges on incantation of the word 'discretion' or any other 'magic word.' Rather, the Supreme Court directed lower courts to focus on the breadth of the administrators' power—their 'authority to determine eligibility for benefits or to construe the terms of the plan.'" (citations omitted)).

Here, the Policy expressly gave Sun Life discretionary [**16] authority (1) regarding "the determination of eligibility for benefits" and (2) to "construe the terms of this policy." Moreover, the Policy provided that "[a]ny court reviewing Sun Life's determinations shall uphold such determination unless the claimant proves Sun Life's determinations are arbitrary and capricious." Thus, we conclude that the language in the Policy sufficiently demonstrated an intent to grant Sun Life discretion to construe the terms of the Policy and to determine eligibility for benefits. *See id.* (holding that the language of a plan, "taken as a whole, . . . express[d] the discretion of the plan administrator to determine eligibility"). Accordingly, we review Sun Life's interpretation of the Policy's terms and its decision to deny Jimenez's claim for an abuse of discretion. *Id.* at 636 (holding that "[i]f the administrator has discretionary authority, a reviewing court applies an abuse of discretion standard").

**B**

Before deciding whether substantial evidence supported Sun Life's decision to deny Jimenez's claim, we must first decide whether the laws of Texas or Louisiana govern the Policy to the extent that state law is not preempted by ERISA. "ERISA preempts 'all [**17] State laws insofar as they . . . relate to any employee benefit plan.'" *Gahn v. Allstate Life Ins. Co.*, 926 F.2d 1449, 1453 (5th Cir. 1991) (alteration in original) (citing 29 U.S.C. § 1144(a)). "However, in what has come to be known as the 'savings clause,' Congress stated that ERISA was not intended to supersede [*406] State laws which 'regulate [ ] insurance.'" *Id.* (alteration in original) (quoting 29 U.S.C. § 1144(b)(2)(A)).

Sun Life contends that we should apply Texas law where it is not preempted by ERISA. It asks us to enforce the choice of law provision contained in the policy, which states that "[t]his Policy is delivered in Texas and is subject to the laws of that jurisdiction." In support, it cites two cases from our sister circuits in which the courts enforced similarly worded choice of law provisions in ERISA cases. *See Greenberg v. Aetna Life Ins. Co.*, 421 F. App'x 124, 125 (2d Cir. 2011) (unpublished); *Fenberg v. Cowden Auto. Long Term Disability Plan*, 259 F. App'x 958, 959 (9th Cir. 2007) (unpublished). Sun Life also argues that applying Louisiana law to this dispute merely because it is the forum state would undercut ERISA's objectives by undermining the uniform interpretation [**18] of the same plan across states. *See Conkright v. Frommert*, 130 S. Ct. 1640, 1651, 176 L. Ed. 2d 469 (2010) ("Uniformity is impossible, however, if plans are subject to different legal obligations in different States." (citation and internal quotation marks omitted)).

Jimenez counters that the Policy's choice of law provision "is immaterial because [La. R.S. 22:975] is the embodied public policy of the State of Louisiana and is mandatory to all insurance policies which apply to insureds who reside in Louisiana." That is, he claims that La. R.S. 22:975 prohibits the Policy from containing a term that would exclude from coverage a loss suffered by Jimenez that was caused by his commission of a non-felony. Further, he asserts that he is a Louisiana resident, that he was employed in Louisiana, and that the accident occurred in Louisiana. He also contends that the Policy's choice of law provision is not valid because "it does not state what law applies in the event of litigation." Lastly, at oral argument and in a subsequent Federal Rule of Appellate Procedure 28(j) letter, Jimenez asserted that La. R.S. 22:868 "invalidates Sun Life's choice of laws argument." [5] La. R.S. 22:868(B) [**19] provides in relevant part that

No insurance contract delivered or issued for

[5] Jimenez's **Rule 28(j)** letter actually refers to La. R.S. 22:898, a provision that no longer exists. However, Jimenez attached a copy of La. R.S. 22:868 to his **Rule 28(j)** letter, and his counsel read from La. R.S. 22:868 at oral argument. Thus, we assume that he meant to refer to La. R.S. 22:868.

> delivery in this state and covering subjects located, resident, or to be performed in this state, or any group health and accident policy insuring a resident of this state regardless of where made or delivered, shall contain any condition, stipulation, or agreement:
> (1) Requiring it to be construed according to the laws of any other state or country except [for an irrelevant exception].

Jimenez argues, without citing any authority, that La. R.S. 22:868 "prohibits clauses with a choice of law other than Louisiana in insurance policies which apply in Louisiana to a Louisiana resident."

We review choice of law issues de novo. *In re Mirant Corp.*, 675 F.3d 530, 533 (5th Cir. 2012). We have not previously addressed how we should decide residual choice of law disputes in the ERISA context. However, we have held that we should [**20] apply federal common law choice of law principles when we exercise federal question jurisdiction over a case. *See Haynsworth v. The Corporation*, 121 F.3d 956, 962 (5th Cir. 2009) (holding, in one of two consolidated cases where jurisdiction was partly based on the presence of a federal question, that "[f]ederal law applies [*407] to the [forum selection/choice of law clause] enforceability determination"); *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 241-42 (5th Cir. 2009) (holding that we must apply general federal maritime choice of law rules when sitting in admiralty); *see also Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 809 (5th Cir. 2009) (Owen, J., dissenting) (en banc) (noting that "circuit courts have concluded that a federal common law choice-of-law analysis should be conducted when the issue is a federal question"). Accordingly, we will apply federal common law choice of law principles to decide whether Texas or Louisiana law governs the Policy to the extent that state law is not preempted by ERISA. *See DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 922 (6th Cir. 2006) ("In determining which state's law applies [**21] in an ERISA case, this court's 'analysis is governed by the choice of law principles derived from federal common law.'" (citation omitted)).

Here, the Policy contained a valid choice of law provision, which indicates that the parties intended for the Policy to be governed by Texas law to the extent that it is not preempted by ERISA. Thus, in order to decide this issue, we must ascertain how to determine whether or not to enforce an ERISA plan's choice of law clause in accordance with federal common law. Although we have not previously addressed this issue, a review of our caselaw in other federal question cases and of caselaw from our sister circuits in ERISA cases reveals three possible approaches to resolving this choice of law issue.

First, our sister circuits have applied two different tests when deciding whether to enforce an ERISA plan's residual choice of law clause. Two of our sister circuits have held that "[w]here a choice of law is made by an ERISA contract, it should be followed, if not unreasonable or fundamentally unfair." *Wang Lab., Inc. v. Kagan*, 990 F.2d 1126, 1128-29 (9th Cir. 1993); *Buce v. Allianz Life Ins. Co.*, 247 F.3d 1133, 1149 (11th Cir. 2001). By contrast, [**22] the Sixth Circuit has applied the Restatement (Second) of Conflict of Laws to decide whether to give effect to a choice of law provision in an ERISA plan; it applied the Restatement because it found an "absence of any established body of federal choice of law rules." *Durden*, 448 F.3d at 922 (citation omitted). Specifically, the court applied § 187 of the Restatement, which addresses when to apply the law of the state chosen by the parties. *Id.* at 922-23.

We have likewise generally referred to the Restatement when deciding choice of law issues in some admiralty cases, *see Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 891 (5th Cir. 1991), and in a recent admiralty case we noted that § 187 supported our decision to enforce an insurance

policy's choice of law clause. We described § 187 thusly:

> Generally speaking, under section 187(1) the law of the jurisdiction chosen by the parties will be applied to the issue in question if the parties could have resolved the issue by an explicit provision in their agreement directed to that issue. Even if that is not the case, the law of the chosen jurisdiction will still apply unless either of conditions (a) and (b) following is met, *viz* (a) the chosen [**23] state has no substantial relationship to the parties or the transaction, and "there is no other reasonable basis for the parties' choice," or (b) the application of the chosen state's law "would be contrary to a fundamental policy of a state" whose law would be the applicable law determined under the section 188 analysis in the absence of an effective choice of law by the parties.

[*408] *Durham Auctions, Inc.*, 585 F.3d at 242 (citation omitted).

We have also employed a similar test when deciding whether to enforce forum selection and choice of law clauses in cases involving international disputes. *See Haynsworth*, 121 F.3d at 962-63. Under this test, we presumptively enforce a valid forum selection and choice of law clause; however, the party seeking to avoid enforcement of the clause can overcome the presumption "by a clear showing that the clause is unreasonable under the circumstances." *Id.* at 963 (citation and internal quotation marks omitted).

We need not decide among these competing standards to resolve this case, however, because we conclude that Jimenez has failed to satisfy his burden to establish that we should not enforce the Policy's choice of law clause under any standard we would [**24] adopt. *See In re Southmark Corp.*, 95 F.3d 53, 1996 WL 459958, at *3 n.7 (5th Cir. 1996) (per curiam) (unpublished) ("Neither party has adequately briefed the potentially complex choice of law issues presented by the facts of this case."). Under any of these standards we would employ to decide this issue, Jimenez bears the burden of establishing that we should not enforce the Policy's choice of law provision. *See Haynsworth*, 121 F.3d at 963 (requiring the party opposing enforcement of a choice of law clause to make a clear showing that the clause was unreasonable under the circumstances); *Kagan*, 990 F.2d at 1129 (holding that a party opposing enforcement of choice of law clause did not "demonstrate that the choice of Massachusetts law is unreasonable or fundamentally unfair"). However, in Jimenez's partial motion for summary judgment and in his brief, he has only claimed that Louisiana law and Texas law treat "illegal act" exclusions differently and that Jimenez lived, worked, and became disabled in Louisiana; he has failed to cite *any* [**25] legal authority to support his claim that a difference between Texas and Louisiana law is sufficient to void the Policy's choice of law provision.

Specifically, Jimenez has stated that (1) La. R.S. 22:975 prevents insurers in the state from denying coverage on the grounds that a claimant's injury was caused by his own misdemeanor, (2) La. R.S. 22:975 "is the embodied public policy of [Louisiana] and is mandatory to all insurance policies which apply to insureds who reside in Louisiana," and (3) Louisiana was where the accident occurred and where Jimenez lived and worked. Although Jimenez has adequately presented his contention that Louisiana law would not allow Sun Life to deny his claim based on his commission of a misdemeanor, he has not made any legally supported argument concerning how or why a Louisiana statute that allegedly conflicts with Texas law can trump the Policy's valid choice of law clause. [6] In short, Jimenez has failed [*409]

---

[6] By referring to the "public policy" of Louisiana, Jimenez may have been making an argument under Louisiana choice of law principles. *See* La. Civ. Code Ann. art. 3540 ("All other issues of conventional obligations are governed by the law expressly chosen or clearly

to argue, much less demonstrate, that enforcing the Policy's choice of law provision would be "unreasonable," "fundamentally unfair," or "contrary to a *fundamental* policy" of Louisiana. Because Jimenez failed to satisfy his burden to establish that the [**26] Policy's choice of law provision should not be enforced, we will apply Texas law to determine this dispute where it is not preempted by ERISA. *See* *Kagan*, 990 F.2d at 1128 (holding that an ERISA claimant seeking to avoid application of choice of law clause did not "demonstrate that the choice of Massachusetts law is unreasonable or fundamentally unfair"). [7]

### C

Because we have concluded that the Policy gave Sun Life "the discretionary authority to construe the [Policy's] terms and to render benefit decisions," we will reverse Sun Life's denial of benefits to Jimenez "only if it abused its discretion." *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009) (citations omitted). Under the abuse of discretion standard, "[i]f the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail." *Ellis v. Liberty Life Assurance Co. of Bos.*, 394 F.3d 262, 273 (5th Cir. 2004). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). "A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Holland*, 576 F.3d at 246 (citation and internal quotation marks omitted); *see id.* ("A plan administrator abuses its discretion [**29] where the decision is not 'based on evidence, even if disputable, that clearly supports the basis for its denial.'" (citation and internal quotation marks omitted)).

Because Sun Life both evaluates claims for benefits and pays benefits on accepted claims, it had a conflict of interest when it denied Jimenez's claim. *See* *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 112, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008). Although Sun Life's conflict of interest does not "impl[y] a change in the *standard* of review, say, from deferential to *de novo* review[,]" we must nevertheless "weigh the conflict of interest as a factor in determining whether there is an abuse of discretion in the benefits denial, meaning we take account of several different considerations of which conflict of interest is one." *Holland*, 576 F.3d at 247 (alteration in original) (citations and internal quotation marks omitted).

[*410] After reviewing the administrative record, we conclude (1) that Sun Life's interpretation of the policy's terms was reasonable and (2) that substantial evidence supported its decision to deny

---

relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537."). However, because Jimenez failed to cite any authority to support his argument, we cannot definitively conclude that Jimenez was making an argument under Louisiana choice of law principles.

In his **Rule 28(j)** letter, Jimenez also referred to a Louisiana statute, which provides that no group accident policy insuring a resident of Louisiana "regardless of where made or delivered, shall contain any [choice of law provision] [**27] [r]equiring it to be construed according to the laws of any other state or country." *See* La. R.S. 22:868(B). However, even if we were to consider this statute despite the fact that Jimenez failed to mention it in the administrative proceedings, in the district court, or in his brief, Jimenez also has failed to cite any authority suggesting how or why this Louisiana statute can trump the Policy's valid choice of law clause. Instead, he has again merely pointed out a difference between Louisiana and Texas law without saying why that difference voids the Policy's choice of law provision. *See also* ***Thomas v. Reliance Standard Life Ins. Co.*, 136 F.3d 138, 1998 WL 30108, at *3 (5th Cir. 1998)** (holding that even if we assumed that the predecessor to La. R.S. 22:868 voided a group ERISA plan's choice of law provision, the claimant had not raised a fact issue regarding whether the policy was issued and delivered in Massachusetts); *cf.* *Kadan v. Commercial Ins. Co.*, 800 F. Supp. 1392, 1395 (E.D. La. 1992) (voiding choice of law provision in non-ERISA case under the predecessor to La. R.S. 22:868 after employing Louisiana choice of law principles).

[7] Because Jimenez has not challenged Sun [**28] Life's characterization of Texas law, we will assume that Sun Life has accurately described Texas law.

Sun Life's claim for benefits.

As an initial matter, Sun Life reasonably interpreted the terms of the Policy. Sun Life interpreted the Policy's "illegal [**30] acts" exclusion to allow it to deny coverage when a claimant's commission of a misdemeanor "contributed" to his injuries. The Policy's "illegal acts" exclusion provides that no coverage will be provided for any disability "that is due to [ ] committing or attempting to commit an assault, felony or other illegal act." Accordingly, Sun Life interpreted the causal language "due to" to only require that an illegal act "contribute" to a claimant's disability. Jimenez has not challenged Sun Life's interpretation of this causation requirement, so, as we will discuss more fully below, we assume that its interpretation was reasonable. *See Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1100 (10th Cir. 1999) (holding that "due to" is an ambiguous causal term and that ERISA plan administrator had discretion to give the phrase multiple reasonable interpretations).

However, Jimenez does challenge Sun Life's interpretation of the phrase "illegal acts." He argues that the scope of activity encompassed by the Policy's reference to "illegal acts" is ambiguous; accordingly, he contends that we should employ the "rules of *contra proferentum* and *ejusdem generis*" to interpret the meaning of the term. *See High v. E-Systems Inc.*, 459 F.3d 573, 578-79 (5th Cir. 2006) [**31] (holding that we only employ the rule of *contra proferentum* when a term is ambiguous); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 219 (5th Cir. 2007) (holding that the canon *ejusdem generis* applies only when a term is ambiguous).

But even if we assume that the phrase "illegal acts" is ambiguous as used in the Policy exclusion, Sun Life has discretion to reasonably resolve any ambiguities in the Policy's terms. *See Conkright*, 130 S. Ct. at 1651 (holding that "the plan administrator's interpretation of the plan 'will not be disturbed if reasonable'" (citation omitted)); *High*, 459 F.3d at 578-79 (holding that a plan administrator had discretion to resolve ambiguities in a plan, "exercising its 'interpretive discretion'" (citation omitted)). Sun Life had discretion to interpret the Policy's terms, and it reasonably interpreted the phrase "illegal acts" to include misdemeanors; accordingly, we conclude that Sun Life's interpretation of the Policy's terms was reasonable. *Holland*, 576 F.3d at 246.

Further, we conclude that substantial evidence in the administrative record supports Sun Life's determinations (1) that Jimenez committed a DUI offense and (2) that his disability was "due [**32] to" his DUI offense. *See Corry*, 499 F.3d at 397-98 (holding that a plan fiduciary does not abuse its discretion if its decision "is supported by substantial evidence and is not arbitrary and capricious" (citation omitted)).

First, substantial evidence supports Sun Life's determination that Jimenez was committing a DUI offense at the time of the accident. According to Louisiana's crime lab, Jimenez had a BAC of nearly twice the legal limit—0.15—when his blood was drawn at the hospital. Further, the police officer who arrived at the scene suspected that alcohol was involved in the accident, and the hospital staff recorded that Jimenez was "intoxicated" when he was admitted. Moreover, Sun Life's medical expert examined Jimenez's medical records and opined that it was [*411] reasonable to conclude that he had a BAC over the legal limit at the time of the accident. Lastly, Jimenez has been indicted for DUI and for careless operation of a motor vehicle. Even though Jimenez had not been convicted of the DUI offense when Sun Life denied his claim, Sun Life still based its decision on relevant evidence that "a reasonable mind might accept as adequate to support" its conclusion that Jimenez was committing [**33] a DUI offense at the time of the accident. *Corry*, 499 F.3d at 398 (citation and internal quotation marks omitted); *see James v. La. Laborers Health and Welfare Fund*, 29 F.3d 1029, 1034 (5th Cir. 1994) (holding that a claim fiduciary properly denied coverage on the grounds that a loss

was sustained in the course of the commission of a felony even though the underlying felony had not been prosecuted). [8]

Second, we [**34] conclude that substantial evidence supports Sun Life's determination that Jimenez's disability was "due to" his alleged DUI offense. Jimenez contends that his alleged DUI offense did not cause his disability because the accident occurred when he was forced off the road to avoid two racing cars. *Cf.* *Carter v. Sun Life Assurance Co.*, No. 05-2214, 2006 U.S. Dist. LEXIS 28622, 2006 WL 1328821, at *9 (E.D. La. May 11, 2006) (holding that an insured's loss resulted from the criminal act of DWI, in part, because there was "no evidence in the record to suggest another possible cause of the crash"). However, even if there were two racing cars that forced Jimenez off the road, thereby proximately causing the accident, Sun Life had discretion to interpret the Policy's terms not to require Jimenez's illegal act to be the sole cause of his injuries. *See* *High*, 459 F.3d at 579 (holding that when a plan administrator has discretion to interpret a plan's terms, it has the authority to reasonably interpret ambiguous terms in the plan). Put another way, in order for a disability to be "due to" the commission of an "illegal act," the "illegal act" does not necessarily have to be the sole cause of the disability. *See* *Kimber*, 196 F.3d at 1100 [**35] (holding in an ERISA case that the phrase "due to" was ambiguous and deferring to the plan administrator's reasonable interpretation of the phrase, which required only a "significant relationship" between a condition and a disability). Jimenez has not challenged Sun Life's interpretation of the causal language in the "illegal acts" exclusion, so we conclude that Sun Life reasonably interpreted "due to" to mean that an illegal act "contributed" to a claimant's disability. *See id.* ("The causal nexus of 'due to' has been given a broad variety of meanings in the law ranging from sole and proximate cause at one end of the spectrum to contributing cause at the other." (citation omitted)).

Lastly, we conclude that substantial evidence supports Sun Life's determination that Jimenez's alleged DUI offense "contributed" to the accident that caused his disability. Here, Jimenez's vehicle traveled over 300 feet after leaving the road, hit several obstructions, and flipped upside down. Further, (1) the responding officer [*412] suspected that alcohol was involved in the accident and cited him for careless operation of a motor vehicle; (2) the medical staff who admitted Jimenez into the hospital observed [**36] that he was "intoxicated"; and (3) Jimenez had a BAC nearly twice the legal limit when he arrived at the hospital after the accident. In addition, Sun Life procured an expert report suggesting that a person with Jimenez's BAC at the time of the accident would be expected to suffer from impaired reflexes, reaction time, and gross motor control. Jimenez was also indicted for careless operation of a motor vehicle, which further indicates that a reasonable person could conclude that his "illegal acts" contributed to the accident.

Under these circumstances, we conclude that Sun Life based its decision on relevant evidence that "a reasonable mind might accept as adequate to support" its conclusion that Jimenez's alleged DUI offense "contributed" to the accident that caused his disability. *Corry*, 499 F.3d at 398 (citation and internal quotation marks omitted); *see* *Dutka ex rel. Estate of T.M. v. AIG Life Ins. Co.*, 573 F.3d 210, 214 (5th Cir. 2009) (holding that a plan administrator's conclusion that drugs in a pilot's

---

[8] Jimenez contends that Sun Life denied his claim after its statutory deadline for deciding Jimenez's administrative appeal. He thus asserts that Sun Life could not base its decision on information acquired after its statutory deadline. But Jimenez cites no authority to support his claim that Sun Life could not consider evidence acquired after its statutory deadline had expired. Accordingly, we will consider all of the evidence contained in the administrative record. *See* *Estate of Bratton v. Nat'l Union Fire Ins. Co.*, 215 F.3d 516, 521 (5th Cir. 2000) ("[T]he administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it.").

system caused a plane crash was not unreasonable, in part, due to the nature of the accident and the difficulty of obtaining direct evidence that drugs cause a crash).

Accordingly, [**37] we conclude that Sun Life did not abuse its discretion by denying Jimenez's claim for disability benefits under the Policy. *Holland,* 576 F.3d at 251 ("Overall, considering the potential conflict of interest as a minimal factor, the evidence is more than sufficient to support the Plan Administrator's exercise of its discretion against the challenges raised by Holland.").

## III

For the foregoing reasons, we REVERSE and RENDER judgment for Sun Life on the issue of coverage. We REMAND to the district court for further proceedings consistent with this opinion.

---

**End of Document**

# Rappa v. Sun Life Assur. Co.

United States District Court for the Western District of Wisconsin

September 27, 2011, Decided; September 27, 2011, Filed

10-cv-585-wmc

**Reporter**

2011 U.S. Dist. LEXIS 164390 *; 2011 WL 13266805

TROY M. RAPPA, Plaintiff, v. SUN LIFE ASSURANCE COMPANY OF CANADA, Defendant.

**Subsequent History:** Motion granted by, Summary judgment denied by, Summary judgment granted by, Remanded by Rappa v. Sun Life Assur. Co., 2013 U.S. Dist. LEXIS 133257 (W.D. Wis., Sept. 18, 2013)

**Counsel:** [*1] For Troy M. Rappa, Plaintiff: Dean R. Rohde, LEAD ATTORNEY, Bye, Goff, & Rohde, Ltd, River Falls, WI.

For Sun Life Assurance Company of Canada, Defendant Amy L. Vandamme, Heather Bessinger, Paul E. Benson, LEAD ATTORNEYS, Michael Best & Friedrich, Milwaukee, WI.

**Judges:** WILLIAM M. CONLEY, District Judge.

**Opinion by:** WILLIAM M. CONLEY

## Opinion

OPINION AND ORDER

Plaintiff Troy M. Rappa brought suit against defendant Sun Life Assurance Company of Canada in state court alleging a common law breach of contract claim for Sun Life's wrongful denial of long-term disability and life insurance benefits. Sun Life removed the action to this court, and in answering the complaint, asserted that Rappa's state law claim is preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Rappa moved to strike Sun Life's preemption defense, while Sun Life filed a motion for summary judgment, seeking dismissal of Rappa's complaint on the basis of preemption.

The court agrees with defendant that Rappa's state law claims are preempted by ERISA and will deny plaintiff's motion to strike. As for the motion for summary judgment, the court will grant the motion to the extent that it finds the state law claims preempted, but declines defendant's [*2] invitation to dismiss Rappa's plausible claim for relief under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a). The court will also deny Rappa's subsequently-filed motion for leave to amend the complaint as moot. Finally, the parties will be afforded the opportunity to file dispositive motions on the remaining ERISA claim as set forth in the order below.

UNDISPUTED FACTS[1]

Before turning to the facts, the court must first address plaintiff's request to bar certain evidence from the summary judgment record. (Pl.'s Opp'n Br. (dkt. #21) 7.) Defendant primarily relies on the deposition testimony of Carole Meurer, a Wisconsin Metal Fab, Inc. ("WMF") employee, in moving for summary judgment. Meurer testified as to WMF's administration of employee benefits and its specific involvement in securing the Sun Life long-term disability and life insurance policy at issue here. Plaintiff argues that the court should bar Meurer's testimony pursuant to Federal Rule of Civil Procedure 32, because plaintiff was not present at the deposition and did not have reasonable notice of it. (*Id.*)

---

[1] The court finds the following facts taken from the parties proposed findings of fact to be material and undisputed.

In response, defendant describes the compressed time in which to take Meurer's deposition testimony due to the briefing schedule of plaintiff's motion to strike. Defendant [*3] emailed and mailed the notice of the deposition, and plaintiff's counsel acknowledges receipt of the emailed notice. (Second Declaration of Dean R. Rohde ("Rohde 2nd Decl.") (dkt. #24) ¶ 3.)

As an initial matter, it is hard to discern any difference between Ms. Meurer's testimony under oath at a deposition and her sworn statement in an affidavit. Since citation to the latter is perfectly acceptable without an opportunity for opposing counsel to cross-examine for clarity, then why not her oral statements also made under oath and recorded contemporaneously by an independent court reporter. If anything, these extemporaneous statements should have more weight, not less, than those contained in an artificially crafted affidavit.

Even assuming the notice requirements of Rule 32 apply here, the notice provided and actually received by plaintiff was reasonable given the constraints. Accordingly, the court will deny plaintiff's request to bar Meurer's deposition testimony and relies on it, at least in part, in setting forth the undisputed facts below.

### A. Rappa's Employment with WMF and WMF's Provision of Employee Benefits

Rappa was an employee at WMF from April 2005 through November 2007. WMF offered [*4] its employees a comprehensive benefits package that included a long-term disability and life insurance plan. WMF paid 100% of the premiums. WMF negotiated all the terms and conditions, acted as the conduit to provide employee information to the insurance companies, and reserved the authority to determine the amount of any employee contribution toward the cost of coverage. WMF also reserved at its sole discretion the option to terminate any one or all of these employee benefits.

Defendant Sun Life issued Group Term Insurance Policy Number 88319 ("the Policy") to WMF. Sun Life renewed the Policy for each of the three years Rappa was employed by WMF, and the terms of these three policies are substantially the same. (Declaration of Amy L. Vandamme ("Vandamme decl."), Ex. B (dkt. #16-2) ("2005 Policy"), Ex. C (dkt. #16-3) ("2006 Policy"), Ex. C (dkt. #16-4) ("2007 Policy").) The Policy included group long-term disability insurance coverage and group life insurance coverage, and was provided to WMF employees, including Rappa, as part of WMF's group benefits plan. The Policy identifies WMF as the policyholder.

Under the terms of the Sun Life Policy, long-term disability coverage was provided [*5] for eligible employees in an amount equal to 60% of their total monthly earnings up to a maximum monthly benefit of $3,000 upon establishing proof of total disability. Under the Policy, eligible employees may also receive $30,000 in life insurance.

Eligible WMF employees could choose to either participate in the WMF group benefits plan or acquire insurance on their own. To be eligible, an employee must work more than 30 hours per week and satisfy a 90-day waiting period. Rappa was eligible to participate in the WMF group benefits plan and, during his employment with WMF, opted to accept benefits under the group benefits plan.

### B. Denial of Rappa's Claim

The record contains little information about the nature of Rappa's disability claim and Sun Life's denial of his coverage requests. The complaint alleges that Rappa was injured in an accident, went through multiple back surgeries, and is totally and permanently disabled as a result of that injury. Rappa claimed to be totally disabled for purposes of coverage under the long-term disability policy as of December 1, 2007.

Sun Life ultimately denied Rappa long-term

disability benefits on May 6, 2010. On May 7, 2010, Sun Life also denied Rappa's [*6] application for life insurance waiver of premium benefits.

### C. Procedural Posture

Rappa filed a lawsuit against Sun Life in the circuit court of St. Croix County, Wisconsin on August 31, 2010. Sun Life timely removed the action to this court on October 7, 2010, claiming that this court has jurisdiction over this matter pursuant to both 28 U.S.C. § 1331 (federal question) and § 1332(a) (diversity of citizenship), and that removal was proper pursuant to 28 U.S.C. § 1441. In his complaint, Rappa alleges that (1) Sun Life breached its contract with Rappa by failing to provide coverage under the long-term disability policy and the life insurance policy, (2) the denials of coverage were arbitrary and capricious, (3) Sun Life is liable for the amounts due under the Policy, as well as other damages, and (4) Rappa is also entitled to recover interest at the rate of 12% per annum pursuant to Wis. Stat. § 628.46, concerning the timely payment of insurance claims. The complaint does not reference ERISA.

In its answer, Sun Life affirmatively alleges that the policies at issue are part of an "employee welfare benefit plan" governed exclusively by ERISA. (Answer (dkt. #3) ¶ 4.) As an affirmative defense, Sun Life claims that "[p]laintiff's claims, and all other [*7] causes of action except those specifically authorized by statute, are preempted by ERISA, 29 U.S.C. § 1001 *et seq.*" (*Id.* at Affirmative Defenses ¶ 5.)

In the preliminary pretrial conference order, Judge Crocker stated:

> As we discussed, the court is treating this case as an ERISA lawsuit, which means no discovery and no jury. If plaintiff wishes to contest these assumptions, or otherwise wishes to challenge this court's jurisdiction following defendant's removal of his case from state court, it is up to plaintiff promptly to file a motion raising all such issues, accompanied by his brief in support.

(Prelim. Pretrial Conference Order (dkt. #5) 1.)

OPINION

There are three motions presently before the court: (1) plaintiff's motion to strike defendant's affirmative defense of ERISA preemption (dkt. #7); (2) defendant's motion for summary judgment on plaintiff's state law claims (dkt. #13); and (3) plaintiff's motion for leave to amend his complaint to add ERISA claims, if the court denies plaintiff's motion to strike and/or grants defendant's motion for summary judgment (dkt. #32). Also pending is a request by defendants for attorney's fees and costs in responding to plaintiff's motion to strike and in bringing its [*8] own motion for summary judgment (dkt. #14).

### I. Jurisdiction

Because the court finds plaintiff's claims arise under a federal statute, ERISA, 29 U.S.C. § 1001, *et seq.*, the court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Even absent a federal question, the court has jurisdiction over plaintiff's claim under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000. Rappa is a citizen of the state of Wisconsin. Sun Life is incorporated in the state of Delaware with its principal place of business in Massachusetts.

### II. Preemption

Plaintiff's motion to strike and defendant's motion for summary judgment concern the same issue: whether ERISA preempts plaintiff's claims premised on state law. Accordingly, the court will decide these two motions together.

ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any

employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a).[2] "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983). The United States Supreme Court has described ERISA's pre-emption provision as "expansive," and [*9] as "intended to ensure that employee benefit plans regulation would be exclusively a federal concern." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004); *see also* *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-46, 107 S. Ct. 1549, 95 L. Ed. 2d 39 (1987).

The issue of preemption turns on the issue of whether the Sun Life Policy is part of an "employee welfare benefit plan," as defined by 29 U.S.C. § 1002(1). The Seventh Circuit has identified five essential elements:

> (1) a plan, fund or program, (2) established or maintained, (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits, (5) to participants or their beneficiaries.

*Ed Miniat, Inc. v. Globe Life Ins. Grp., Inc.*, 805 F.2d 732, 738 (7th Cir. 1986).

As Judge Crocker anticipated at the preliminary pretrial conference, this is not a close question. The undisputed facts demonstrate that the Sun Life Policy meets all five of these requirements. The Policy was part of WMF's comprehensive benefits package established and maintained for the purposes of providing disability and life insurance benefits to eligible employees who opted to participate in the plan. At its core, Rappa's complaint alleges that [*10] he was denied benefits under the Policy. A denial of benefits claim is precisely the type of claim ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), allows plan participants to bring.

This outcome should not be surprising: courts, including the Seventh Circuit and this court, routinely find common law breach of contract claims, like the one alleged by Rappa, preempted by ERISA. *See, e.g.*, *Rud v. Liberty Life Assurance Co. of Boston*, 438 F.3d 772, 777 (7th Cir. 2006) ("A suit to enforce a claim for benefits under an ERISA plan can be brought only under ERISA; parallel state law remedies are preempted."); *Winters v. UNUM Life Ins. Co. of Am.*, 232 F. Supp. 2d 918, 921 (W.D. Wis. 2002) (concluding that ERISA preempted plaintiff's claim that defendant insurer denied him benefit in violation of the terms of his employer-provided, group long-term disability insurance); *see also* *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 582 (6th Cir. 2002) (affirming district court's conclusion that state law claims against insurer alleging denial of benefits were preempted by ERISA and describing the outcome as "well established"); *Hollis v. Provident Life & Accidental Ins. Co.*, 259 F.3d 410, 414 (5th Cir. 2001) (finding plaintiff's state law claims alleging denial of disability benefits preempted by ERISA); *see generally* 1 Ronald J. Cooke, *ERISA Practice & Procedure* § 2:14 at 2-121 (2d ed. 2011) ("Civil actions against employers and employee benefit plans which are predicated on common law contract principles have consistently been held to be preempted [*11] by ERISA.").

Perhaps in recognition of the precariousness of his position, plaintiff lobs a few arguments in an attempt to circumvent preemption. First, plaintiff contends that the Policy falls within an ERISA

[2] One of the exemptions -- concerning a plan maintained solely for the purpose of complying with applicable disability insurance laws (29 U.S.C. § 1003(b)(3)) -- is discussed below. The other exemptions do not appear to apply and plaintiff does not contend that they do.

exemption because it is group insurance, citing Department of Labor "safe harbor" regulations. (Pl.'s Opening Br. (dkt. #8) 4-5.) This exemption only applies if certain requirements are met, namely that the employer does not contribute to the plan. 29 C.F.R. § 2510.3-1(j). The undisputed facts establish that WMF paid 100% of its employees' long term disability insurance and life insurance premiums.

Second, plaintiff contends that its claim for interest under Wisconsin Statute § 628.46 is not preempted because it is a state law that regulates insurance. (Pl.'s Opening Br. (dkt. #8) 6 (citing 29 U.S.C. § 1144(b(2)(A) ("nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.")).) For the purposes of this exemption, a law regulates insurance if (1) "the state law [is] specifically directed toward entities engaged in insurance," and (2) if it "substantially affect[s] the risk pooling arrangement between the insurer and the insured." *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342, 123 S. Ct. 1471, 155 L. Ed. 2d 468 (2003) (internal citation [*12] omitted); *see also* *Pilot Life*, 481 U.S. at 50 (holding that to regulate insurance the law must "effect a spreading of policyholder risk"). Section 628.46 penalizes insurance companies for failing to pay claims timely, but does not concern spreading policyholder risk. Therefore, plaintiff's inclusion of a claim under § 628.46 does not save his state law claims from preemption. *See* *Koehler v. Metropolitan Life Ins. Co.*, No. 06-C-0233, 2007 U.S. Dist. LEXIS 47945, 2007 WL 1960627, at *1 n.1 (E.D. Wis. July 2, 2007) (holding claim brought pursuant to § 628.46 for denial of benefits preempted by ERISA).[3]

Third, Rappa argues that the Policy does not contain certain information required under ERISA and Department of Labor regulations. (Pl.'s Opp'n Br. (dkt. #21) 2.) Rappa does not explain how this failure would take a plan completely out of ERISA's regulatory sphere, rather than constitute a violation of ERISA. But even assuming this information is necessary in order for the Policy to fall within the definition of an "employee welfare benefits plan," as defendant points out, this requirement applies to summary plan descriptions, and the summary plan descriptions produced by defendant and received by plaintiff contain the required information. (Def.'s Reply Br. (dkt. #26) 3-5.)

Fourth, plaintiff argues that Sun Life waived its preemption defense by including a choice-of-law provision [*13] in the Policy. (Pl.'s Opp'n Br. (dkt. #21) 4.) The Policy provides: "This Policy is delivered in Wisconsin and is subject to the laws of that jurisdiction." (2005 Policy (dkt. #16-2) p.1.) Plaintiff cites several cases in support of this argument, but none concern ERISA preemption; rather, in these cases, courts looks to a particular state law (rather than federal common law) in interpreting a contract. To find that a choice-of-law provision constitutes waiver of an ERISA preemption defense would thwart Congress's intent "to ensure that employee benefit plans regulation would be exclusively a federal concern." *Davila*, 542 U.S. at 208.[4]

### III. Leave to Amend Complaint

The court's finding that ERISA preempts Rappa's state law claims does not resolve this case as defendants contend. In *Bartholet v. Reishauser A.G. (Zürich)*, 953 F.2d 1073 (7th Cir. 1992), the Seventh Circuit reviewed a district court's dismissal

[3] This is not to say that, if successful, plaintiff is not entitled to prejudgment interest. To the contrary, "[w]hether to award an ERISA claimant prejudgment interest is a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities." *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 779 (7th Cir. 2010) (internal citation and quotation marks omitted).

[4] Defendant also raises several procedural arguments in response to plaintiff's motion to strike. (Def.'s Combined Br. (dkt. #14) 5-6.) The court need not reach these arguments given its determination that ERISA preempts plaintiff's state law claims.

of an employee action against his employer alleging failure to pay certain benefits violated state law. The Seventh Circuit affirmed the district court's finding that the state law claims were preempted by ERISA, but held that the finding of preemption did not spell dismissal of the complaint:

> It does not follow, however, that Bartholet's suit should have been dismissed under [*14] Rule 12(b)(6). The district judge believed that until Bartholet amended his pleadings to invoke ERISA, all he has was a claim arising under state common law, and as state law is preempted the complaint failed. The assumption implicit in this approach is that a complaint must plead law as well as fact. Why?

*Id.* at 1077-78. The Seventh Circuit in *Bartholet* and again in a similar case, *McDonald v. Household International, Inc.*, 425 F.3d 424 (7th Cir. 2005), directed district courts to focus on "whether relief is possible under any set of facts that could be established consistent with the allegations" instead of "whether the complaint points to the appropriate statute." *Bartholet*, 953 F.2d at 1078; *see also* *McDonald*, 435 F.3d at 428 ("The real question was whether relief was possible under any legal theory -- ERISA included -- under any set of facts that could be consistent with the allegations.").[5]

In his complaint, Rappa alleges that he was injured in an accident and that as a result he is totally disabled, as that term is defined under the Policy. (Compl. (dkt. #1-1) ¶¶ 5-7.) Rappa further alleges that he is entitled to payment benefits under the long-term disability policy and a waiver of premiums under the life insurance policy. (*Id.* at ¶¶ 8-9.) Rappa also alleges that all administrative remedies have been exhausted. (*Id.* at ¶ 14.) [*15] Lastly, Rappa alleges that Sun Life was arbitrary and capricious in denying benefits. (*Id.* at ¶ 15.)

These allegations are sufficient to state a claim under 29 U.S.C. § 1132(a), which provides in pertinent part:

> A civil action may be brought --
> (1) by a participant to beneficiary --
> . . .
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]

ERISA defines a "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer." 29 U.S.C. § 1002(7).

Here, Sun Life acknowledges that "Rappa was eligible to receive benefits under the Policy in issue by virtue of this employment with WMF." (Def.'s PFOFs (dkt. #15) ¶ 46.) The fact that some of the relief requested by Rappa in his complaint -- namely his request for compensatory and noncompensatory damages -- is not available under ERISA does not warrant dismissal; Rappa may still proceed under ERISA's more limited relief scheme. *McDonald*, 435 F.3d at 430 (noting that ERISA does not allow the recovery of consequential damages and therefore that [*16] "[t]his fact may knock out a large portion of what [plaintiffs] were hoping to recover in this action").[6]

## IV. Defendant's Request for Attorney's Fees and Costs

[5] While both cases precede *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the Seventh Circuit has since explained that a "plaintiff has no obligation, in the complaint, to set forth the various legal theories under which it hopes to recover." *Atlantic Mut. Ins. Co. v. Jardis Indus., Inc.*, 290 Fed. Appx. 940, 942, 2008 WL 3977381, at *2 (7th Cir. 2008) (unpublished) (citing *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 667-68 (7th Cir. 2008)).

[6] Rappa has moved for leave to amend his complaint, but an amendment to his complaint is not necessary for this lawsuit to continue.

Buried in its opening brief, defendant requests that "it be awarded its costs and attorney's fees associated with defending against Plaintiff's Motion to Strike and asserting its Motion for Summary Judgment pursuant to 29 U.S.C. § 1132(g)(1)." (Def.'s Br. (dkt. #14) 24.) In its reply brief, Defendant acknowledges that it is not yet a prevailing party -- a correct statement, given that no judgment has been entered in this case. Nevertheless, defendant maintains its request, arguing "it is confident that it will be the prevailing party in this case and is willing to make its request for attorneys' fees at this time because the circumstances of this case are particularly egregious." (Def.'s Reply (dkt. #26) 10.)

Relying on 29 U.S.C. § 1132(g)(1), defendant contends that it is entitled to attorney's fees as the prevailing party and because Rappa's motion to strike was not "substantially justified." (*Id.* (citing *Sullivan v. Randolph*, 504 F.3d 665, 670, 672 (7th Cir. 2007)).) Recently, in *Hardt v. Reliance Standard Life Insurance Company*, 560 U.S. 242, 130 S. Ct. 2149, 176 L. Ed. 2d 998 (2010), the Supreme Court held that a party need not be a prevailing party "before a court may award attorney's fees under § 1132(g)(1)," but rather must simply show "some [*17] degree of success on the merits. *Id.* at 2158. This court's finding that plaintiff's state law claims are preempted by ERISA does not reach the merits of plaintiff's complaint, making an attorney's fee request pursuant to § 1132(g)(1) premature at best.

In this court's view, defendant's request for attorney's fees and costs is really a back-door request for sanctions under Federal Rule of Civil Procedure 11. A request for sanctions under Rule 11 "must be made separately from any other motion, . . . must describe the specific conduct that allegedly violates Rule 11(b)[, and] . . . must be served under Rule 5, but must not be filed or presented to the court if the challenged paper, claim defense, contention or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2). The court will not entertain defendant's request at this time and in this form. If defendant wishes to challenge plaintiff's motion to strike under Rule 11, then defendant must begin by demonstrating it followed proper procedure to serve and file such a motion.[7]

ORDER

IT IS ORDERED that:

1) plaintiff Troy M. Rappa's motion to strike (dkt. #7) is DENIED;

2) defendant Sun Life Assurance Company of Canada's motion for summary judgment (dkt. #13) is DENIED IN [*18] PART AND GRANTED IN PART;

3) plaintiff's state law claims are preempted by ERISA;

4) plaintiff's motion for leave to amend his complaint (dkt. #32) is DENIED AS MOOT; and

5) dispositive motions on plaintiff's claim for relief pursuant to 29 U.S.C. § 1132(a) are due on or before November 30, 2011.

Entered this 27th day of September, 2011.

BY THE COURT:

/s/ William M. Conley

District Judge

End of Document

[7] Plaintiff's counsel attests that "[a]fter reviewing the testimony of Carol Meurer, Mr. Rappa offered in good faith to stipulate to application of ERISA preemption, thereby waiving his meritorious choice-of-law argument, provided Sun Life would not pursue its quest of costs and attorney fees." (Rohde 2nd Decl. (dkt. #24) ¶ 8.) This statement casts significant doubt as to the viability of any Rule 11 motion.